523 A.2d 747

Robert M. HUGHES and Doris M. Hughes, husband
and wife, Appellees,

v.

COMMONWEALTH of Pennsylvania DEPARTMENT OF
TRANSPORTATION, Appellant.

Roy H. KINSINGER and Susie Kinsinger, husband
and wife, Appellees,

v.

COMMONWEALTH of Pennsylvania DEPARTMENT OF
TRANSPORTATION, Appellant.

Marshall T. HETZ and Marvin L. Hetz, Appellees,

v.

COMMONWEALTH of Pennsylvania DEPARTMENT OF
TRANSPORTATION, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 15, 1986.

Decided April 6, 1987.

Reargument Denied July 10, 1987.

302

Jeffrey L. Giltenboth, Asst. Counsel, Com. of Pa., Dept. of Transp., Office of Chief Counsel, Pittsburgh, for appellant.

Nathaniel A. Barbera, Vincent J. Barbera, Somerset, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

The three matters listed herein were consolidated at trial due to a similar factual basis and an identical issue, being: whether section 611 of the Eminent Domain Code[1] is unconstitutional. Since the trial court determined that the section was in contravention of constitutional mandate, we assumed jurisdiction pursuant to 42 Pa.C.S. § 722(7).[2]

The relevant facts of the respective cases are as follows.

### No. 79 W.D. Appeal Docket 1985

On July 16, 1979, the Pennsylvania Department of Transportation (hereinafter PennDot) filed a declaration of taking, condemning the property of appellees Robert and Doris Hughes.[3] Estimated just compensation was offered in writing on July 17, 1979.[4] The property condemned was a

1. Act of June 22, 1964, Sp.Sess., P.L. 84, Art. I, § 101, 26 Pa.S. § 1–101 *et seq.*

2. Act of July 9, 1976, P.L. 586, No. 142, § 2, *as amended,* 42 Pa.C.S. § 722(7).

3. § 1–402. Condemnation; passage of title; declaration of taking.
   (a) Condemnation, under the power of condemnation given by law to a condemnor, which shall not be enlarged or diminished hereby, shall be effected only by the filing in court of a declaration of taking, with such security as may be required under section 403(a), and thereupon the title which the condemnor acquires in the property condemned shall pass to the condemnor on the date of such filing, and the condemnor shall be entitled to possession as provided in section 407.
   26 Pa.S. § 1–402.

4. § 1–407. Possession; entry; payment of compensation
   (a) The condemnor, after the expiration of the time for filing preliminary objections by the condemnee to the declaration of taking, shall be entitled to possession or right of entry upon payment of, or a written offer to pay to the condemnee, the amount of just compensation as estimated by the condemnor. If a condemnee thereafter refuses to deliver possession or permit right of entry, the prothonotary upon praecipe of the condemnor shall issue a rule, returnable in five days after service upon the condemnee, to show cause why a writ of possession should not issue, upon which the court, unless preliminary objections warranting delay are pending, may issue a writ of possession conditioned upon payment to the condemnee or into court of such estimated just compensation and on such other terms as the court may direct.
   26 Pa.S. § 1–407.

portion of prime farm land involved in the Hughes' farming operation. In 1978, pursuant to the imminent condemnation of their property, the Hughes sold their dairy herd and ceased all dairy operations, although they continued crop farming their land until the actual condemnation. After condemnation, the Hughes made no use of the condemned area.

## No. 80 W.D. Appeal Docket 1985

On October 17, 1979, PennDot filed a declaration of taking on a portion of Roy and Susie Kinsinger's dairy farm. Estimated just compensation was offered in writing on October 19, 1979. The condemned property was again prime farm land which the Kinsinger's made no use of after the condemnation, except to remove crops which were planted prior to the filing of the declaration of taking. As a result of the condemnation of their land, the Kinsinger's vacated the uncondemned portion of their farm on July 10, 1981, and thereafter sold it on September 30, 1981.

## No. 81 W.D. Appeal Docket 1985

PennDot filed a declaration of taking on October 17, 1979. PennDot offered estimated just compensation in writing on July 17, 1979. The condemned property was a portion of farm land attached to the dairy farm of Marshall and Marvin Hetz. After the condemnation, the Hetzes reduced the taken farm land's use to an exercise field for their cattle, thereby effectively diminishing the overall size of their dairy farm operation.

The amounts offered by PennDot in the preceding three cases were $37,775 to the Hughes, $26,940 to the Kinsingers, and $60,875 to the Hetzes. After a hearing before the Board of Viewers PennDot appealed to the Court of Common Pleas of Somerset County wherein juries returned verdicts of $164,300 for the Hughes, $108,000 for the Kinsingers and $133,000 for the Hetzes. PennDot eventually paid the verdicts absent delay compensation. A non-jury trial was held resulting in a verdict of delay damages in

favor of the respondents. In post-trial motions, Penndot refused to pay delay damages asserting the provisions of section 611 of the Eminent Domain Code which reads:

§ 1–611. Delay compensation

*The condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation,* nor during such period shall a condemnor be entitled to rent or other charges for use and occupancy of the condemned property by the condemnee. Compensation for delay in payment shall, however, be paid at the rate of six per cent per annum from the date of relinquishment of possession of the condemned property by the condemnee, or if the condemnation is such that possession is not required to effectuate it, then delay compensation shall be paid from the date of condemnation: Provided, however, That no compensation for delay shall be payable with respect to funds paid on account, or by deposit in court, after the date of such payment or deposit. Compensation for delay shall not be included by the viewers or the court or jury on appeal as part of the award or verdict, but shall at the time of payment of the award or judgment be calculated as above and added thereto. There shall be no further or additional payment of interest on the award or verdict.

26 Pa.S. § 1–611 (emphasis added).

The learned and able trial judge held section 611 unconstitutional on the reason that if the uses of the land to the condemnee are diminished by the condemnation, notwithstanding the condemnee's possession, any formula or mandate of the Commonwealth that does not provide compensation for that diminished use is not just compensation and, therefore, unconstitutional under the United States and Pennsylvania Constitutions.[5]

**5.** "[I]f ever the condemnee's retained possession and use of the land are so limited by the condemnation itself as to destroy a substantial equivalence between their value and that of either the amount of interest otherwise payable as delay compensation, or that of the land to the condemnee prior to the condemnation, the condemnee is not justly compensated and section 611 cannot be constitutionally applied

Section 611 denies compensation during the period a condemnee remains in possession and balances that denial by prohibiting the Commonwealth rent or charges for the use and occupancy of the condemned property by the condemnee.

Section 611 has an appealing simplicity, and if it provides for "just compensation", a requirement written in stone and bronze in both the United States and Pennsylvania Constitutions, it is also constitutional.[6]

■ What is "just compensation" cannot be determined by the exclusive fiat of the General Assembly, for like all others they cannot be the judge in their own case. The determination of what is "just" between the Commonwealth and a condemnee is the function of the judiciary.

> The right of the legislature of the State, by law, to apply the property of the citizen to the public use, and then to constitute itself the judge in its own case, to determine what is the 'just compensation it ought to pay therefor, or how much benefit it has conferred upon the citizen by thus taking his property without his consent, or to extinguish any part of such 'compensation' by prospective conjectural advantage, or *in any manner* to interfere with the just powers and province of courts and juries in administering right and justice cannot for a moment be admitted or tolerated under our Constitution. If anything *can be* clear and undeniable, upon principles of natural justice or constitutional law, it seems that this must be so.

*Monongahela Navigation Co. v. United States,* 148 U.S. 312, 327–28, 13 S.Ct. 622, 627, 37 L.Ed. 463 (1893) (quoting *Isom v. Mississippi Cent. R. Co.,* 36 Miss. 300, 315 (1858). *See also Miller v. United States,* 620 F.2d 812 (1980). Nothing would seem clearer than that neither the condemn-

. . ." *Kinsinger v. Commonwealth, Dept. of Transportation,* 46 Somerset 49, 56 (1985).

6. U.S. Const. Amend. V; Pa. Const. Art. 1, § 10, Pa. Const. Art. 10, § 4.

or nor the condemnee can determine what is just compensation.

We must presume that an Act of the legislature is intended to be constitutional and wherever a legislative act can be preserved from unconstitutionality it must be preserved. When the validity of a statute is in issue we must refer to the Statutory Construction Act of 1972.[7] That Act provides in relevant part:

§ 1921. Legislative intent controls

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. 1921

§ 1922. Presumptions in ascertaining legislative intent

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

.    .    .    .    .

7. Act of December 6, 1972, P.L. 1339, No. 290 § 3.

(3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.

1 Pa.C.S. § 1922.

§ 1928. Rule of strict and liberal construction.

. . . . .

(b) All provisions of a statute of the classes hereafter enumerated shall be strictly construed:

. . . . .

(4) Provisions conferring the power of eminent domain.

1 Pa.C.S. § 1928.

The question before us is, therefore, what did the legislature mean by "possession". That meaning, to be constitutional, must comport with the concept of just compensation, otherwise it is an unacceptable, self-serving ukase of one party to a dispute.

Unless defined specifically within a particular act, words and phrases are to be contrued according to their common and approved use. 1 Pa.C.S. § 1903. Possession is not defined in the Eminent Domain Code, nor in the general definition section of the Consolidated Statutes, 1 Pa.C.S. § 1991. Possession has been defined as "owning or having a thing in one's power." 30 P.L.E. *Property* § 6 (1960); and also, "the holding or having something as one's own, or in one's control." OXFORD ENGLISH DICTIONARY 1156 (Vol. VII (1933)). Furthermore, Black's Law Dictionary defines possession as "[t]hat condition of facts under which one can exercise his power over a corporeal thing at his pleasure to the exclusion of all other persons." BLACK'S LAW DICTIONARY 1047 (5th ed. 1979).

■ Eminent domain statutes are strictly construed against the Commonwealth. 1 Pa.C.S. § 1928(b)(4). If two possible meanings of a word conflict, the word favoring the individual is adopted. Here each party has a degree of possession. The Commonwealth has an equitable possession with the option to take physical possession when they

will. Until they do, the landowners have physical possession.

■ In that twilight of eminent domain, between present possession in the owner and the future right of possession by the Commonwealth, all the possible ordinary concomitants of possession repose in the actual potential of the land. If the land cannot be put to its ordinary use because of the condemnation, such a result, without adequate compensation, would be an unjust taking and a waste of the uses of land. It follows that when the condemnation deprives the landowner of the normal uses of the land, pending physical possession by the Commonwealth, compensation must also be intended.

■ Therefore, we hold that where a declaration of taking deprives a landowner of the full and normal use of his property, *as established by the use to which his property was devoted prior to the declaration,* then that landowner shall no longer be considered "in possession" within the meaning of section 611, and the condemnee may claim delay damages from the date of the declaration of taking. Thus, we conclude that section 611, when so construed, does pass constitutional muster in determining when delay damages go into effect.

■ Turning to the case at bar, the facts established that the properties condemned were all portions of prime farm land used by the owners for the raising of crops.[8] In each instance, after condemnation, PennDot refused to give the condemnees an estimated date on which it would take physical possession; nor would it give guarantees that it would accomodate the farmers' planting schedules. This refusal forced the condemnees to cease all farming operations on the condemned portions of their farms for fear that they would lose the invested planting once PennDot as-

8. Although the three farms herein are referred to as dairy farms the lower court continually alluded to their use in crop production. PennDot has not disputed this point and we will assume for purposes of this opinion that the properties condemned contained fertile planting soil used by the condemnees in the operation of their businesses.

sumed possession. To this date PennDot has not taken possession of any of the condemned properties. Thus the record establishes that PennDot's declaration of taking, in conjunction with its subsequent actions, infringed on the landowners' full and normal use of their property, and that delay damages were properly awarded.

■ There remains the question of whether in accordance with "just compensation" the General Assembly may fix the rate of interest applicable to delay damages. The principles are the same. The General Assembly cannot by legislation determine what is just compensation. In Section 611 they fixed the interest rate for delay damages at six percent per anum. In *Miller v. United States, supra,* the court summed up the basic legal principle for the rate of interest.

> The award of less than a fair rate of interest to [condemnees] must be viewed as an impermissible interference with the exercise of their right to a judicial determination of the amount of just compensation.

*Id.* at 839.

In *United States v. Blankinship,* 543 F.2d 1272 (9th Cir.1976), the court addressed the issue of whether the six percent rate of interest as established in 40 U.S.C. § 258a [9] was applicable in assessing delay compensation without regard to prevailing interest rates. This case is particularly germane to the instant proceedings because the comment by the Joint State Government Commission which follows 26 Pa.S. Section 1–611 states that section 611 "is suggested by the procedure in Federal takings where interest is automatically added to the final award at the rate of 6%, ... (40 U.S.C. § 258a)." 26 Pa.S. § 1–611 (Comment).

The court in *Blankinship* concluded that since the final interest rate is a factual issue to be determined by the trier thereof, the proper mode of measurement is:

> [T]he rate of interest that would have been available to the person from whom the property has been taken had he, at the date of taking, invested the total amount of any

9. Act of Feb. 26, 1931, c. 307, § 1, 46 Stat. 1421, 40 U.S.C. § 258a.

deficiency in the original deposit in a marketable public debt security issued by the United States Treasury having a duration commencing with the date of taking and ending with the deposit in the registry of the court of the entire deficiency with proper interest.

*Blankinship, supra* at 1274. Moreover, the court emphasized that its method of calculation was not intended to condemn other courts who choose the calculation of a local rate of interest given the circumstances of the cases before them. *Id.* at 1227.[10]

Other states have likewise followed the federal lead in holding that "[i]f the property owner produces evidence that the six percent rate is constitutionally insufficient, he should be entitled to a higher rate of return as part of just compensation." *King v. State Roads Commission of the State Highway Administration*, 298 Md. 80, 91, 467 A.2d 1032, 1038 (1983). *See also Matter of City of New York*, 58 N.Y.2d 532, 462 N.Y.S.2d 619, 449 N.E.2d 399 (1983) (upheld lower court's determination that nine percent was a fair rate for the period of 1978–1981.)

■ In holding the mandatory six percent rate of section 611 unconstitutional, Judge Coffroth considered the rate of interest for commercial loans (over $2,000.00) during the period of detention (July, 1979 through July, 1984). There was also additional expert testimony on assorted bank and money market investments available during the period in question. The court ultimately determined that the landowners were entitled to delay compensation at the commer-

---

**10.** Another federal court provided the following method:

> In fixing an award of interest, the district court should attempt to determine what "a reasonably prudent person investing funds so as to produce a reasonable return while maintaining safety of principal" would have achieved. *U.S. v. 429.59 Acres of Land,* 612 F.2d 459, 465 (9th Cir.1980).

*Washington Metropolitan Area Transit Authority v. One Parcel of Land,* 706 F.2d 1312, 1322 (4th Cir.1983), *cert. denied, One Parcel of Land v. Washington Metropolitan Area Transit Authority,* 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983).

cial loan rates of interest prevailing during the detention period in question. We agree with this decision.[11]

The record in this case clearly demonstrates that the six percent interest rate mandated by Section 611 of the Code would not have provided just compensation to the condemnees. Therefore, the trial court acted appropriately in refusing to impose that rate, and choosing instead the prevailing commercial loan rate. *See Whitcomb v. Philadelphia*, 264 Pa. 277, 107 A. 765 (1919).

■ However, PennDot's contention that the trial court erred in assessing simple interest on the unpaid delay compensation has merit. It is well settled that the striking of one part of a statute, does not necessarily invalidate the remainder. 1 Pa.C.S. § 1925. Section 611 states in conclusion that "[c]ompensation for delay shall not be included by the viewers or the court or jury on appeal as part of the award or verdict, but shall at the time of payment of the award or judgment be calculated as above and added thereto. There shall be no further or additional payment of interest on the award or verdict." 26 Pa.S. § 1–611.[12] Although we have altered the method of calculation, there is no reason for striking the General Assembly's policy against imposing double interest on an award.

Therefore, the order of the Court of Common Pleas of Somerset County is reversed in part and affirmed in part and this case is remanded to that court for disposition consistent with this opinion.

11. It should be noted that the General Assembly has drafted a Proposed Eminent Domain Code which would eliminate the first sentence of section 611 denying delay compensation during which time a condemnee remains in possession of the property after condemnation and allow compensation for delay in payment based on a compound annual interest derived from the annual Index of Long-Term United States Government Bond Yields. PROPOSED EMINENT DOMAIN CODE, Joint State Government Commission (1985), § 713.

12. The comment to section 611 further states that the section was not intended "to have interest being paid on delay compensation." 26 Pa.S. § 1–611 (comment). It also states that "[t]he condemnee is only entitled to one 6% on his award. He would not be entitled to the 6% and then interest on that 6%." *Id.*

NIX, C.J., files a concurring and dissenting opinion in which ZAPPALA, J., joins.

HUTCHINSON, J., files a concurring and dissenting opinion.

NIX, Chief Justice, concurring and dissenting.

I agree with the judgment of the majority that section 611 of the Eminent Domain Code, Act of June 22, 1964, Sp.Sess., P.L. 84, Art. VI, § 611, 26 P.S. § 1–611 (Supp. 1986), passes constitutional muster in determining when delay damages go into effect. I am compelled to dissent, however, from the majority's further conclusion that the mandatory six percent interest rate prescribed by section 611 is unconstitutional. I firmly believe that the appropriate interest rate at which property owners should be compensated for delay is a matter of legislative judgment and that it is the prerogative of the General Assembly to assess whether that rate continues to be fair and just.

ZAPPALA, J., joins in this concurring and dissenting opinion.

HUTCHINSON, Justice, concurring and dissenting.

I agree with the majority that a landowner should no longer be considered in possession of his property when he has been fully deprived of the normal use of that property as a result of a declaration of taking. In such cases the condemnee may claim delay damages under Section 611 of the Eminent Domain Code.

I must disagree, however, with the majority's conclusion that the General Assembly has unconstitutionally fixed the rate of interest at which these damages will be paid. Legislative action always carries a strong presumption of constitutional validity. *Pennsylvania Federation of Teachers v. School District of Philadelphia*, 506 Pa. 196, 484 A.2d 751 (1984); *Martin v. Unemployment Compensation Board of Review*, 502 Pa. 282, 466 A.2d 107 (1983), *cert. denied*, 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 541 (1984). Thus, we should not hold a legislative enactment unconstitutional

except on the clearest showing of invalidity. Appellees do not make such a showing in the record before us. I would, therefore, uphold as constitutional the payment of delay damages to condemnees (appellees herein) at the rate of six percent as set forth at Section 611 of the Code. *See* 26 P.S. § 1–611 (Supp.1986), Majority op. at 304–306.

When a property owner has been fully deprived of the normal use of his land by an entity clothed with the power of eminent domain, our federal and state constitutions mandate the payment of just compensation. U.S. Const. amend. V; U.S. Const. amend. XIV; Pa. Const. art. I, § 10. Just compensation is comprised of two elements: the condemnation award and interest thereon.[1] A condemnation award will be upheld unless the amount awarded is so low as to constitute a deprivation of the condemnee's constitutional and statutory rights. *See In re Condemnation of a Tract of Land Being Part of Hatfield Park,* 23 Pa.Commonwealth Ct. 394, 352 A.2d 230 (1976). The same principle holds true for the interest paid on that award, called delay compensation under our Code. The record in this case establishes that the interest rate paid on passbook savings accounts at the County Trust Company (acquired by Pittsburgh National Bank in 1982) was five-and-one-quarter percent for the years 1979–1983 and five-and-one-half percent in 1984. R.R. at 111–112. The interest rate paid by the Citizens National Bank for the years 1979–1984 was four percent. R.R. at 129. A statutory interest rate of six percent, which is higher than the rate of interest paid on these passbook savings accounts, is not so low as to deprive appellees of their constitutional right to just compensation.

Even if the record in this case showed a deprivation of just compensation sufficient to overcome the presumption of constitutionality, I would be compelled to note my dis-

1. Payment of interest is required as part of just compensation only in cases when the condemnor takes possession of the property prior to payment therefor, or when, as here, the property owner is fully deprived of the normal use of his property prior to receipt of compensation. In other situations, it is an element of damages, additional to the just compensation required by the constitution and awarded as a matter of legislative grace.

agreement with the majority's use of the prevailing commercial loan rate as the measure of delay compensation in this case. Those courts which have approved the consideration of interest rates higher than the statutory rate in fixing delay damages generally disfavor or expressly reject the use of commercial loan rates. Instead they use the "reasonably prudent investor" standard. *See, e.g., United States v. 429.59 Acres of Land,* 612 F.2d 459 (9th Cir.1980); *Leverty and Hurley Co. v. Commissioner of Transportation,* 192 Conn. 377, 471 A.2d 958 (1984). This standard is based on the overall average interest rate a reasonably prudent investor could have obtained based on prevailing interest rates.[2] It correctly focuses on the use to which the money lost through delay in compensation could have been put rather than on the costs the condemnee would incur in borrowing at commercial loan rates to replace the money lost as a result of the delay. The use of commercial loan rates is disfavored for two reasons: costs based on condemnees' borrowing rates are highly speculative, and the cost method fails to ensure uniformity of treatment among condemnees. *See Georgia-Pacific Corp. v. United States,* 640 F.2d 328, 366–67 (Ct.Cl.1980).

I recognize that we approved the use of commercial rates to measure the cost of delay on the record in *Whitcomb v. Philadelphia,* 264 Pa. 277, 107 A. 765 (1919), a condemnation case arising before adoption of the 1964 Eminent Domain Code. However, in that Code our General Assembly has provided several alternate mechanisms for compensating condemnees for transitional costs incurred. *See 26*

**2.** I would note here that depositors may get a better return with passbook savings accounts paying five-and-one-half percent than with some money market savings accounts because of the fees associated with those accounts. 50 *Consumer Reports* 669 (November 1985). Other forms of investment have minimum deposit amounts ranging from $1,000 (5–year Government issues) to $100,000 (Bankers Acceptance; 3 and 6 month Prime Bank CD's). R.R. at 109–110. Early withdrawal of funds from six-month money market certificates at the County Trust Company incurs a penalty equal to loss of three months' interest. R.R. at 110–111. The penalty for early withdrawal varies from bank to bank and ranges from loss of one month's to one year's interest. R.R. at 111.

P.S. § 1–610.1 (Payment on account of increased mortgage costs); 26 P.S. § 1–601A (Moving and related expenses of displaced persons); 26 P.S. § 1–602A (Replacement housing for homeowners); 26 P.S. § 1–603A (Replacement housing for tenants and others). Given the methods the Eminent Domain Code now provides for recompense of costs incurred by condemnees, I see no reason to follow *Whitcomb's* pre-Code approval of the use of commercial loan rates. To the extent it is inconsistent with this opinion, I would overrule *Whitcomb v. Philadelphia, supra.* I would reject judicial imposition of commercial loan rates to measure delay compensation even if the statutory rate were so low as to create a conflict with the constitutional right to just compensation, a conflict I do not believe exists on this record.

I dissent and would uphold as constitutional payment of delay compensation at the rate of six percent, as set forth in Section 611. Accordingly, I would modify the order of the Court of Common Pleas of Somerset County, by vacating that part which awarded delay compensation to appellees at prevailing commercial loan rates, and would fix the rate at six percent in accordance with the statute.