James E. HAGAN and Mary M. Hagan

v.

EAST PENNSBORO TOWNSHIP,
Appellant.

James E. HAGAN and Mary Martha
Hagan, a/k/a/ Mary M. Hagan,
his wife, Appellants,

v.

EAST PENNSBORO TOWNSHIP.

Commonwealth Court of Pennsylvania.

Argued April 13, 1998.
Decided June 11, 1998.

Henry F. Coyne, Camp Hill, for appellant.

Richard C. Snelbaker, Mechanicsburg, for appellees.

Before McGINLEY and FLAHERTY, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

This is an appeal and cross-appeal from an order of the Court of Common Pleas of Cumberland County (trial court) dated June 20, 1997, whereby the trial court awarded James E. Hagan and Mary Martha Hagan, a/k/a Mary M. Hagan (the Hagans) $23,925 in delay damages and $580 in counsel fees.

In March 1986, East Pennsboro Township (Township) proposed to extend sanitary sewer services to the Hagans' property and the surrounding area. On August 29, 1986, the Township filed a Declaration of Taking and secured an easement for the sewer extension over the property. The Township raised the grade level of the ground to accommodate the sewer line, which made the Hagans' basement inaccessible, prevented the storage of electrical supplies, and eliminated their dog kennel. Additionally, the Hagans lost parking next to their house. Both sides requested the appointment of a Board of View (Board).

The first hearing was held on November 8, 1993. Due to the death of the Hagans' expert witness a continuance was granted. A rescheduled hearing was set for January 18, 1994, but was continued due to snow. The Board finally proceeded to hearing on November 17, 1994. Upon the filing of the Board's report, the Hagans appealed to the trial court. After a de novo trial on January 31, 1997, the jury returned a $30,000.00 verdict in favor of the Hagans. The Township paid the verdict on March 14, 1997.

The trial court awarded delay damages in the amount of $23,925.00. The trial court tolled damages for the twelve-month delay attributable to the Hagans because of the demise of their expert witness. Also, the trial court stated that the proper interest rate should be the "average of the commercial loan rates of interest between August 1986 and March 1997". Trial Court Opinion, June 20, 1997 (Opinion), at 4; Reproduce Record (R.R.) at 258a. The trial court explained the delay damages award as follows:

The trial court obtained the necessary figures from Plaintiffs' Exhibit Number Three which is a compendium of information and history of the Wall Street Journal prime rate which serves as the basis for the commercial loan rate of interest. Applying eight and one quarter percent to $30,000 results in a total of $26,606 in delay damages. However, $2,681 must be subtracted from this amount in order to account for the twelve month delay caused by the Plaintiffs. Therefore, total delay damages for the Hagans equal $23,925.

Opinion, at 4, 5; R.R. at 258a–259a.

The trial court found the Township was obdurate, dilatory, and vexatious in two instances. First, the Township moved to join the County Commissioners as additional defendants and second, the Township attempted to obtain copies of the Hagans' income tax records. The trial court determined that the motions were without merit and filed by the Township to cause annoyance. The Hagans were awarded counsel fees in the amount of $580.00.

The Township asserts that the trial court erred when it failed to recognize that the Hagans waived delay damages at the Board's proceeding on November 8, 1993; failed to exclude from the delay damages delays caused by the Board, the Hagans, and their counsel; figured the delay damages at an 8¼% interest rate on non-commercial property; allowed the Hagans to testify about settlement negotiations; awarded attorney's fees; and refused to have the audiotapes of the Board's proceeding transcribed.

The Hagans, in their cross-appeal, contend the trial court committed two errors, first, by tolling delay damages for a portion of the

period that payment was delayed, and second, that the trial court used the wrong interest rate to compute delay damages.

■ Our scope of review in an eminent domain case is limited to whether the trial court abused its discretion, an error of law was committed, or the findings of fact are supported by substantial evidence. *In re Condemnation of 30.60 Acres of Land,* 132 Pa.Cmwlth. 158, 572 A.2d 242 (1990).

### Waiver

■ The Hagans contend that they are entitled to delay damages for the entire time period that payment was detained, that the Eminent Domain Code [1] (Code) does not authorize courts to assign blame for delay (as was the law prior to the 1964 amendment to the Eminent Domain Code), and that the trial court committed legal error when it "tolled" delay compensation for 12 months. The Township contends that the trial court erred because the Board conditioned the November 8, 1993, continuance upon a waiver by the Hagans of their claim for delay damages. The condition reads:

14. The Hearing was continued to permit the Condemnees to obtain an Appraisal on the following conditions:

(a) The Hearing would be continued for a time not exceeding one (1) month or until a hearing room becomes available to the Board after one (1) month from November 8, 1993.

(b) That Condemnees obtain an Appraisal within one (1) month and deliver a copy thereof to Henry F. Coyne, Esquire, Solicitor of East Pennsboro Township, at least ten (10) days prior to the Continued Hearing.

(c) That the Condemnees will be prohibited from offering expert Appraisal Testimony in the event they fail to obtain an Appraisal within one (1) month and a copy thereof is not delivered to Henry F. Coyne at least ten (10) days prior to the Continued Hearing.

(d) That the Condemnees are not entitled to damages for delay in payment from and after November 8, 1993, the date of this Hearing.

(e) That if the above conditions are not acceptable to Condemnee and complied with by the Condemnees, the Condemnees waive their right to present an expert witness at the Continued Hearing.

Report of Board of Viewers, November 6, 1995, at 3; R.R. at 12a.

In *Department of Transportation v. Yudacufski,* 83 Pa.Cmwlth. 609, 479 A.2d 635 (1984), we held that because Herman Yudacufski failed to object specifically to the findings of the Board of View concerning the area of the property, the extent and the date of the taking that he was bound by the Board's findings in the subsequent trial de novo. We construed Section 517 of the Code, 26 P.S. § 1–517 as follows:

Section 517 requires that the court preliminarily decide questions not involving the amount of an award, but it does not require or authorize a court to resolve factual issues without the benefit of all relevant evidence. Because the statute is silent on the method to be used by the court in resolving factual issues, *the procedure for any given case is within the discretion of the trial judge. The judge may resolve factual questions by obtaining stipulations, by reference to a transcript of the evidence presented to the Board of View, by a separate evidentiary hearing prior to trial, or by evidence adduced at trial but not submitted to the jury.* As long as the method used is fair to all of the parties, the alternative chosen by the trial judge is solely a matter of discretion. The important thing is that no objections which involve a question of fact be decided without an orderly fact finding process. (emphasis in original).

*Yudacufski,* 479 A.2d at 640; *quoting, Hershey v. Department of Transportation,* 20 Pa.Cmwlth. 537, 342 A.2d 497, 500–501 (1975).

A reading of the Board's Report reveals that the continuance issued by the Board was conditioned upon the Hagans' waiver of delay damages after November 8, 1993, coupled

---

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101–1–903.

with the requirement that the hearing commence within one month's time.[2] The trial court found:

> Both sides requested the appointment of a Board of View which held its first hearing on November 8, 1993. Although both the Board of View and the Township were ready to proceed with the remainder of the hearing, the Hagans were in need of an expert witness and asked for a continuance of the trial. The earliest the Hagans were ready to continue was the date of the next scheduled hearing on November 17, 1994.
>
> . . .
>
> In this case, delay damages shall be paid for the period between August 29, 1986 to March 14, 1997 with the exception of one twelve month period.
>
> . . .
>
> This twelve month delay was caused by the Hagans since the other parties were ready to continue after the first hearing. For this reason, the delay damages must be tolled for the twelve month period.

Opinion, at 1–3; R.R. at 255a–257a. The delay from November 8, 1993, to November 17, 1994, was caused by the Hagans. Because the Township was ready to proceed on November 8, 1993, to November 17, 1994, was caused by the Hagans. Because the Township was ready to proceed on November 8, 1993, the trial court correctly tolled delay damages for the following year until the Hagans were ready to continue.

### Delay Damages

Both sides take issue with the rate of interest the trial court applied to compute delay damages. The Township contends that the interest rate for delay damages should be six per cent as set forth in the Code, because the Hagans' property was residential, not commercial. The Hagans, on the other hand, contend the commercial loan rate is not limited to commercial property and that residential property owners are entitled to delay damages computed at the same rate as a condemnee of commercial property. The Hagans also contend that the trial court

erred by averaging the annual prime rate of interest between August 1986 and March 1997, because that average does not accurately reflect the actual commercial loan rate.

■ Section 611 of the Code, 26 P.S. § 1–611, provides for delay damages. In *Hughes v. Department of Transportation*, 514 Pa. 300, 311–312, 523 A.2d 747, 753 (1987), the Pennsylvania Supreme Court held that the six percent rate for delay damages under Section 611 of the Code was unconstitutional and that condemnees "were entitled to delay compensation at the commercial loan rates prevailing during the detention period in question." In *Hughes*, the Supreme Court approved the tabulation of delay damages at commercial loan rates:

> In holding the mandatory six percent rate of section 611 unconstitutional, [the trial judge] considered the rate of interest for commercial loans ... during the period of detention. ... There was also additional expert testimony on assorted bank and money market investments available during the period in question. The court ultimately determined that the landowners were entitled to delay compensation at the commercial loan rates on interest prevailing during the detention period in question.

*Id.* at 311–12, 523 A.2d at 753. The Supreme Court in *Hughes* approved commercial loan rates and did not distinguish between commercial and residential owners. The trial court correctly determined that delay damages must be computed at commercial loan rates.

■ However, we must conclude the trial court erred in its computation. In *Marx Stationery & Printing Co. v. Redevelopment Authority of the City of Philadelphia*, 675 A.2d 769 (Pa.Cmwlth.1996), we stated:

> In *Hughes*, the Supreme Court held that delay compensation should be awarded at the commercial loan rates of interest prevailing during the detention period in question. This holding was followed by this court in *Appeal of Pennsylvania Depart-*

---

**2.** We note that the hearing did not proceed within the one month time period, however, this was not challenged by either party.

*ment of Transportation*, 146 Pa.Cmwlth. 344, 605 A.2d 1286 (1992). However, the trial court, although recognizing that the jury's award of delay compensation at 5% was inadequate, followed *Wasserott v. PennDOT*, 13 D. & C. 4th 593 (Luzerne Co.1991), which calculated delay damages in a condemnation case using the rates of interest proscribed by Pennsylvania Rule of Civil Procedure No. 238 for general damages in civil trials, which refers to the prime rate as published in the first edition of The Wall Street Journal each year. Therefore, the trial court erred in not molding the verdict to award delay compensation at the prevailing commercial loan rates prevailing during the detention period in question.

*Id.* at 778–79.[3] In the present case, the trial court erred when it substituted the prime rate as published in *The Wall Street Journal* each year for the commercial loan rate. The commercial loan rate differs from the prime rate. *Id.; See Hughes,* and *Appeal of Cossell,* 668 A.2d 231 (Pa.Cmwlth.1995), *appeal denied,* 544 Pa. 636, 675 A.2d 1252 (1996). Richard Snelbaker, attorney for the Hagans, questioned David Coover, a retired president of the First Bank and Trust Company:

Q Now, through the rest of your career, and as you have continued to keep up with it, can you explain what a commercial loan rate of interest is in general definition?

A Well, most commercial loan rates, there are of course, floating rates and fixed rates. And a lot of them today are floating rates for various reasons.

At the time that we are speaking of in, 1986, our commercial loan rates would have been based on what the prime rate was. And, generally speaking, they were anywheres from prime plus one to prime plus one and a half to even three.

. . .

Q Well, the definition of commercial loan rate was generally to lend money for commercial purposes?

A Correct.

. . .

Q And for the person who was neither the best credit not the worst credit, what type of a loan rate would be involved with a commercial rate?

A I would say, generally speaking, that would have been prime plus one, prime plus one and a half.

. . .

Q And what is a prime rate of interest?

A The prime rate is that interest rate which banks charge their best, highest quality customers.

. . .

Q . . . The prime rate is the rate that is charged to the best credit of the bank, is that correct?

A Correct. Like a triple A organization.

Q Now, the average person, the average borrower, would that be a prime person, would that be a person—

A No, it would not.

Q And that would be this prime plus one or prime plus one and a half?

A Correct.

Notes of Testimony, March 31, 1997, at 9–11; R.R. at 119a–21a. The Township on the other hand offered no evidence on this issue. Therefore, we must reverse the order of the trial court in part and remand for delay damages to be computed at the relevant commercial loan rates prevailing during the detention period.

### *Attorney Fees*

■ The Township contends that the trial court committed legal error when it awarded attorney fees. The trial court found the Township was vexatious on two occasions, first, when it attempted to join the County Commissioners as additional defendants, and second, when it sought the Hagans' income tax records.

■ "It is well established that the reasonableness of an attorney fee is a matter for the sound discretion of the trial court and can be disturbed by an appellate court only when there is a clear abuse of discretion." *Condemnation of Lands in Pgh.,* 69 Pa.

**3.** Pennsylvania Rule of Civil Procedure No. 238(e) states as follows, "This rule [regarding damages for delay] shall not apply to (1) eminent domain proceedings".

Cmwlth. 621, 451 A.2d 1071 (1982). The County Commissioners and the Hagans'. income tax records had nothing to do with the "before and after value" of the Hagans' residential property. The trial court reasonably concluded the conduct of Township was vexatious in these two instances.[4]

### Settlement Negotiations

 The Township also contends that the trial court erred when it allowed the Hagans to testify concerning settlement negotiations. The brief testimony before the trial court was not reversible error. The trial court noted a lack of interest in the evidence and stated, "... it may be absolutely worthless." Transcript of Trial Court Hearing at 24; R.R. at 134a. In order to constitute reversible error a ruling on evidence must harm the complaining party. *Anderson v. Hughes,* 417 Pa. 87, 208 A.2d 789 (1965); *Amoco Oil Co. v. Department of Transportation,* 679 A.2d 1369 (Pa.Cmwlth. 1996), *appeal denied,* 547 Pa. 758, 692 A.2d 567 (1997). The Township failed to show any harm as a result of this testimony, ergo, the evidentiary ruling by the trial court was not reversible error.

### Audiotapes

 Finally, the Township contends that the trial court erred when it refused to have the Chairman of the Board deposit with the trial court the audiotapes of the Board's proceeding. Further, the trial court refused to have the audiotapes transcribed for this appeal or for use before the trial court.

 The trial court had the authority to refuse the Township's request to transcribe the audiotapes of the Board's proceedings. Any appeal from the Board to the trial court is *de novo.* The trial judge may, at his discretion, obtain transcripts of the Board's proceedings, obtain stipulations, hold a separate evidentiary hearing, or use evidence ad-

4. The trial court found as follows:
[T]here were two instances of conduct by the Township which the Court does find to be obdurate, dilatory, and vexatious in nature. First, the Township made a motion attempting to join the County Commissioners as additional defendants. Second, the Township attempted

duced at trial but not submitted to the jury, as long as the method used is fair. *See Yudacufski.* No unfairness has been shown.

Accordingly, we affirm in part and reverse and remand in part.

### ORDER

AND NOW, this 11th day of June, 1998, the Order of the Court of Common Pleas of Cumberland County dated June 20, 1997, is affirmed in part and reversed and remanded in part. The Order of the trial court insofar as it tolled delay damages is affirmed, the award of attorney's fees is affirmed, and the refusal of the trial court to permit the submission of audiotapes or transcripts of the Board of View hearing is affirmed. However, we reverse that part of the Order of the trial court which awarded $23,925.00 in delay damages, and remand for delay damages to be calculated at the commercial loan rate of interest.

Jurisdiction relinquished.

to obtain copies of the Hagan's income tax records. Both of these instances rise to the level of vexatious conduct and had no part in the case. The Court finds these motions filed by the Township to be without merit and purposeful only in causing annoyance.
Opinion, at 6; R.R. at 260a.