Andrew A. Lang Jr.,  :
                    Appellant  :
                              :
            v.                :
                              :
Commonwealth of Pennsylvania,  :  No. 551 C.D. 2014
Department of Transportation  :  Submitted: December 19, 2014


BEFORE:  HONORABLE DAN PELLEGRINI, President Judge[1]
         HONORABLE MARY HANNAH LEAVITT, Judge[2]
         HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                          FILED: March 14, 2016


Andrew A. Lang, Jr. (Lang) appeals from the Allegheny County Common Pleas Court's (trial court) March 24, 2014 order denying his Motion to Determine Computation for Delay Damages (Motion). Lang raises four issues for this Court's review: (1) whether *Hughes v. Department of Transportation*, 523 A.2d 747 (Pa. 1987) supports the Department of Transportation's (DOT) calculation; (2) whether the uncertainty of the condemned property's value precludes interest from running; (3) whether DOT's calculation constituted just compensation; and, (4) whether applying DOT's payment to interest first, constitutes compound interest which is prohibited by the Eminent Domain Code[3] (Code). After review, we affirm.

On March 31, 2009, Lang owned real property commonly known as the Millvale Industrial Park, located in Millvale, Allegheny County (Property). On that date, DOT filed a Declaration of Taking relating to the Property. DOT offered Lang

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[3] 26 Pa.C.S. §§ 101-1106.

$2 million as just compensation for the Property. On August 25, 2009, DOT paid Lang $1.5 million of the $2 million. On October 2, 2009, DOT paid the remaining $500,000.00 to Lang. Dissatisfied with the estimated just compensation (EJC), Lang requested a hearing before a Board of Viewers (Board), after which the Board awarded him $2 million for the Property. Lang appealed from the Board's determination to the trial court and requested a jury trial. On September 23, 2013, a jury awarded Lang $3.75 million as just compensation for the Property.

Thereafter, Lang and DOT entered into a stipulation (Stipulation) which the trial court approved on December 17, 2013. The Stipulation established June 6, 2009 as DOT's date of possession of the Property, selected February 7, 2014 as the final payment date by which DOT was to pay Lang, and set an interest rate of 4.25% for DOT's delay in paying Lang as a damage calculation. The Stipulation also required DOT to pay Lang $4,000.00 for reasonable appraisal, attorney fees and engineering fees. Importantly, the Stipulation further provided:

> [I]n addition to the agreed amount as set forth above, [DOT] shall pay [Lang] delay compensation as calculated by [DOT] in accordance with its interpretation of Section 713 of the [Code] from June 6, 2009, the agreed-upon date of [DOT's] possession of the condemned premises, to February 7, 2014, the projected date of payment of the balance of the jury verdict as set forth above. [DOT] has calculated that [sic] delay compensation to be in the amount of $368,643.83 and will process payment in accordance with that calculation.[4] [Lang] does not agree with that

---

[4] DOT explained in its brief to this Court:

> In calculating the delay damages, DOT made an initial calculation at the agreed-upon interest rate of 4.25% on the total jury verdict of $3,750[,]000 from June 6, 2009 (the date of possession) through August 26, 2009 (the date of the initial EJC payment). It then made a second calculation at the same interest rate on $2,250,000 (the jury verdict of $3,750,000 minus the first EJC payment of $1,500,000) from August 26, 2009 through October 2, 2009 (the date of its second EJC payment). Finally, it made a third calculation at the 4.25%

2

calculation and acceptance of the payment in accordance with this calculation shall be without prejudice to [Lang] to seek additional delay compensation in the amount of $10,606.90 in accordance with [Lang's] method of calculation and interpretation of the [Code].

Reproduced Record (R.R.) at 10a.

On January 3, 2014, Lang filed the instant Motion seeking the additional $10,606.90[5] of delay damages. Specifically, Lang asserted his position as follows:

[W]hen [DOT] made the first payment to him, in the amount of $1.5 million, [DOT] was only entitled to credit for $1,465,068.49[,] as delay damages accrued on the $3.75 million from the date of possession to the date of payment. Lang's position was that the payment consisted of $34,931.51 of interest on the amount of $3,750,000 that was due as of the date of possession, albeit as determined by the jury in its verdict in 2013. Therefore, Lang contends that when the payment of $1.5 million was made, it should have been calculated thusly (R. 13a, 19a):

June 6, 2009, amount due………………$3,750,000.00

August 25, 2009, interest due on $3,750,000
at 4.25% annual rate …………………….$ -34,931.51

August 25, 2009, Payment of $1,500,000, less
interest of $34,931.51 ………………… $1,465,068.49

Principal Balance due as of
August 25, 2009:………………………$2,284,931.51

Lang Amended Br. at 7.[6] DOT filed its Answer to the Motion on January 13, 2014. On January 14, 2014, the trial court issued its Memorandum and Order denying

---

interest rate on $1,750,000 (the jury verdict minus $2,000,000, the total of the two EJC payments) from October 2, 2009 through February 7, 2009 (the date of DOT's final payment).

DOT Br. at 4.

[5] Lang conceded during argument before the trial court that, due to an error in calculations, the amount in dispute was actually $8,517.00 rather than $10,606.90.

3

Lang's Motion. In reaching its decision, the trial court relied on the case of *Gross v. City of Pittsburgh*, 58 Pa. D. & C. 4ᵗʰ 445 (2000), wherein Lang's counsel had raised the same argument, which argument was rejected.[7] Lang appealed to this Court.[8]

In this appeal, Lang challenges the calculation of interest as delay damages, arguing that "[a]pplying a [p]ayment on [a]ccount of an [i]nterest [b]earing [o]bligation, to [i]nterest [f]irst, [does not] [c]onstitute[] [c]ompound [i]nterest[.]" Lang Br. at 13. Lang further contends: "In every instance when interest is to be calculated under Pennsylvania law, payments are to be applied 'first to any interest' . . . and then to any balance of principal." Lang Br. at 14. Lang relies in part on *Hughes*, wherein our Supreme Court affirmed the lower court's finding that a

---

[6] In his brief, Lang stated that the calculation pertaining to the first payment "is presented for illustrative purposes. The second payment would be treated the same[.]" Lang Amended Br. at 7 n.3.

[7] The *Gross* decision was affirmed by this Court in an unreported decision. On further appeal, the Pennsylvania Supreme Court affirmed by per curiam order. In a concurring statement, Justice Lamb explained:

> In this appeal, [the condemnee] quibbles with the trial court's calculation of delay damages, arguing that the $ 2.0 million in estimated just compensation paid by the city as it was ordered to do on March 5, 1997 should have reduced the delay damages as they had accrued to that date instead of, as the trial court applied the payment, reducing the $ 6.5 million just compensation as it was finally determined. There can be no doubt that this issue was waived by [the condemnee] since the precise method of accounting for the March 5, 1997 payment adopted by the trial Court was proposed by [the condemnee].

*Gross v. City of Pittsburgh*, 828 A.2d 1007, 1008 (Pa. 2003) (Lamb, J., Concurring) (footnote omitted).

[8] "In eminent domain cases, this Court reviews whether the trial court committed an abuse of discretion or an error of law. 'When an appeal presents a question of law, such as statutory interpretation, our scope of review is plenary.'" *In re PPL Elec. Utils. Corp. of Real Estate Situate in Schuylkill Cnty.*, 68 A.3d 15, 18 n.5 (Pa. Cmwlth. 2013) (citation omitted) (quoting *In re Condemnation of Springboro Water Auth. of Prop. of Gillette*, 898 A.2d 6, 8 n.3 (Pa. Cmwlth. 2006)).

4

**legislatively-fixed** 6% interest rate for delay damages in the then-existing Code was an impermissible legislative interference with the condemnees' constitutional right to just compensation, and that rather than a fixed 6% interest rate, "the landowners were entitled to delay compensation at the **commercial loan rates of interest** prevailing during the detention period in question." *Id*. at 753 (emphasis added).

Initially, we note that Section 713 of the Code specifically addresses delay damage calculation and payment. That section states:

> (a) General rule. -- Compensation for delay in payment shall be paid at an annual rate equal to the prime rate as listed in the first edition of the Wall Street Journal published in the year, plus 1%, **not compounded**, from:
>
>   (1) the date of relinquishment of possession of the condemned property by the condemnee; or
>
>   (2) if possession is not required to effectuate condemnation, the date of condemnation.
>
> . . . .
>
> (c) Award or judgment. -- **Compensation for delay shall not be included by the viewers or the court or jury on appeal as part of the award or verdict but shall,** *at the time of payment of the award or judgment***, be calculated under subsection (a) and added to the award or judgment. There shall be no further or additional payment of interest on the award or verdict.**

26 Pa.C.S. § 713 (emphasis omitted; bold and italics emphasis added).

In *In re Condemnation of Property Located in Lower Windsor Township*, 986 A.2d 190 (Pa. Cmwlth. 2009) (*Lauxmont*), this Court explained:

> The Code establishes that delay compensation is payable for any late payment of just compensation for a taking, and that the compensation is calculated from the time the property was relinquished until the time the money has been paid. Nothing in the Code, nor the comments thereto, require more than one payment of delay compensation. **Said payment is to occur 'at the time of payment of the**

**award or judgment.'** Section 713(c) [of the Code]. **Nor is there anything in the Code that specifically requires the payment of EJC delay compensation at a time different from delay compensation on the entire award provided for in Section 713 of the Code**.

*Id*. at 192-93 (emphasis added). The *Lauxmont* Court further recognized that "the Code does **not** require that delay compensation is **due** at the same time that the EJC was paid." *Id*. at 193 (emphasis added).[9]

Thus, in the instant matter, although delay damages accrued from the date of Lang's relinquishment of the Property, which by Stipulation was June 6, 2009,[10] "the Code does not require that delay compensation [was] **due** at the same time that the EJC [was] paid." *Lauxmont*, 986 A.2d at 193 (emphasis added). Pursuant to Section 713(c) of the Code, compensation for delay damages could not be calculated until the time of payment of the "**award or judgment[.]**"[11] 26 Pa.C.S. §

---

[9] Notably, the *Lauxmont* Court calculated delay damages in the same manner as DOT did here, stating:

> The County owes [condemnee] delay compensation on the awarded amount of $17,250,000. Section 713 of the Code determines how the delay compensation will be calculated, i.e., the amount of delay compensation on $5,500,000 from November 9, 2005 (date possession was tendered) through September 20, 2007 (date $5,500,000 was paid), and the amount of compensation on the difference in just compensation awarded and EJC of $9,750,000 from November 9, 2005 (date possession was tendered) through July 16, 2008 (date of jury award of just compensation).

*Id*. at 193.

[10] In the instant action, on August 25, 2009, DOT paid Lang $1.5 million of the $2 million offered for the Property as EJC. On October 2, 2009, DOT paid the remaining $500,000.00. Lang appealed to the Board of Viewers and then to the trial court. On September 25, 2013, a jury awarded Lang $3.75 million for the Property. Lang argues that the Property's uncertain value does not prevent interest from accruing. *See* Lang Amended Br. at 20. We agree with Lang's argument that interest ran from the date of the Property's relinquishment. However, Lang is incorrect that the interest was **due** from that date. *See Lauxmont*.

[11] The 4.25% interest rate was not approved by the trial court until December 17, 2013, more than two years after the EJC payments were made.

6

713(c) (emphasis added). There was no award or judgment at the time the EJC payments were made. Therefore, no delay damages could have been calculated, and none could have been due, since "payment [of delay damages occurs] . . . 'at the time of payment of the award or judgment.'"[12] *Lauxmont*, 986 A.2d at 193 (quoting 26 Pa.C.S. § 713(c)).[13] DOT's 2011 EJC payments could not be applied to delay damages that were not calculated until December 17, 2013, when the trial court approved the Stipulation, and were not due until February 7, 2014 (the stipulated date set for final payment).

Notwithstanding, Lang argues that in accordance with *Hughes*, Lang is entitled to delay compensation calculated consistent with commercial loans – that payments first be applied to interest, and then to principal. Lang further asserts that the trial court mischaracterized his method of delay damage calculations as providing for compound interest[14] in violation of *Hughes*. He contends that applying a payment on account of an interest-bearing obligation to interest first does not constitute compound interest.

Specifically, Lang references Section 713(a) of the Code which states that "[c]ompensation . . . shall be paid at an annual rate equal to the prime rate . . . ." 26 Pa.C.S. § 713(a). Lang maintains that since the terms "annual rate" and "prime rate" are "commercial term[s] identifying certain rates charged by banks, [the General Assembly] intended . . . that delay damages be similarly calculated, as a commercial loan." Lang Amended Br. at 17 (emphasis in original). In addition, Lang asserts that

---

[12] The prohibition in Section 713(c) of the Code against calculating and, thus, not paying delay damages until the time the award or judgment is paid is consistent with the concept that interest may not accrue on delay damages.

[13] The EJC payments were intended to reduce the principal, thereby minimizing the accrual of interest, rather than paying down already-accrued interest. Pursuant to the Code, paying down the interest is not allowed because that interest cannot itself accrue interest.

[14] "[C]ompound interest" is defined as "[i]nterest paid on both the principal and the previously[-]accumulated interest." *Black's Law Dictionary* 887 (9th ed. 2009).

7

since the current Code was enacted after *Hughes* and reflects the *Hughes* Court's rejection of a fixed interest rate, the Code requires that delay damages be calculated as a commercial loan.

DOT counters that "Lang's computation causes delay damages to be calculated on a higher right-of-way damage[15] figure with each subsequent calculation because all of the prior EJC payments are not applied to right-of-way damages." DOT Br. at 6. According to DOT, "[Lang's] calculations by their very nature considers [sic] the interest from the initial calculations in completing the remaining calculations thereby increasing the amount of delay damages payable compared to DOT's calculations. This is a type of compounding[,]" and thus, it is prohibited by the Code. DOT Br. at 9; *see* 26 Pa.C.S. § 713(a). In other words, under Lang's approach, when DOT's payment is applied, the outstanding EJC principal balance would be reduced by an amount less than the EJC payment, since part of the EJC payment would be used to pay delay damages first. The effect of paying the delay damages before the principal would result in less money available to apply to reduce the principal balance, and thus the remaining higher principal balance would subsequently accrue more interest in the form of delay damages.

This Court explained in *McGaffic v. Redevelopment Authority of City of New Castle*, 732 A.2d 663, 669 (Pa. Cmwlth. 1999):

> The interest rate utilized by the trial court in *Hughes,* however, was not compounded. The Supreme Court specifically stated that it had 'no intention of striking the General Assembly's policy against imposing double interest on an award.' *Id.* at . . . 753. Double interest or compound interest is interest that is paid not only on the principal, but also on any interest accrued. [*Black's Law Dictionary*] 286 (6th Ed. 1990). **Thus, despite the standard application of**

---

[15] In its brief, DOT refers to "damages caused to the owner's real property interest as a result of the condemnor's exercise of its eminent domain powers[,]" as "right-of-way damages." DOT Br. at 23.

> **compound interest in the commercial banking industry,
> an award of compound interest on delay compensation
> has not been permitted under Pennsylvania law.**

*McGaffic,* 732 A.2d at 669 (emphasis added; footnote omitted).

Section 307(c)(1) of the Code provides that EJC amounts paid by a condemnor "shall be without prejudice to the rights of either the condemnor or the condemnee to proceed to a final determination of the just compensation, and any payments made shall be considered only as payments pro tanto of the just compensation as finally determined." 26 Pa.C.S. § 307(c)(1). In support of his argument that the EJC payments should be applied under Section 307 of the Code to both delay damages and principal, Lang contends that "delay damages constitute one element of 'just compensation.'" Lang Amended Br. at 15. Lang relies upon the language of Section 701 of the Code which states: "A condemnee shall be entitled to just compensation for the taking, injury or destruction of the condemnee's property, determined as set forth in this **chapter**[, and] [o]ther damages shall also be paid or awarded as provided in this **title**." 26 Pa.C.S. § 701 (emphasis added). Lang argues that since the Code section providing for delay damages (Section 713) is within the same **chapter**, delay damages must be a part of just compensation.

Our Courts historically have not included delay damages within the term "just compensation." *See Ridley Twp. v. Forde*, 459 A.2d 449, 451 (Pa. Cmwlth. 1983) ("Delay damages are not properly within the scope of condemnation damages for the property; rather they are separate compensation for the condemnee's loss of use of the property during the period after he relinquishes possession and before he receives his just compensation."); *see also In re DeFacto Condemnation & Taking of Lands of WBF Assocs., L.P.*, 972 A.2d 576, 592 (Pa. Cmwlth. 2009) ("[D]elay damages must be based on the outstanding just compensation award . . . ."); *Lauxmont*, 986 A.2d at 192 ("The Code establishes that delay compensation is payable for any late payment of just compensation for a taking[.]"); *Redevelopment*

9

*Auth. of the City of Phila. v. Associated Retail Stores, Inc.*, 408 A.2d 181, 182 (Pa. Cmwlth. 1979) ("Section 611 [of the former Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*,] 26 P.S. § 1-611, sets forth a mandatory requirement of delay compensation for delays in payment of just compensation for property taken.").

Further, although Section 713 of the Code is within the same chapter as Section 701 of the Code, Section 702(a) of the Code **explicitly defines the term "[j]ust compensation" as "the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected by the condemnation and the fair market value of the property interest remaining immediately after the condemnation and as affected by the condemnation."** 26 Pa.C.S. § 702(a) (emphasis added). "Generally, the best indication of legislative intent is the statute's plain language." *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830, 840 (Pa. 2013). Notably, the Code's definition of "just compensation" does not include or otherwise refer to delay damages or any other damages.[16] Therefore, Lang's argument fails.

Citing to *Wolf v. Commonwealth*, 170 A.2d 557 (Pa. 1961), Lang next argues that DOT's calculation would not meet the constitutional requirement of "just compensation." We disagree. Our Supreme Court in *Wolf* stated:

> The Constitution of the State requires that just compensation be first made or secured for the taking of private property for public use. Where that is not first done,

___

[16] The predecessor to Section 702 of the Code (the statutory provision at issue in *Gross*) defined 'just compensation' as "the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, **and such other damages as are provided in this code.**" Act of June 22, 1964, P.L. 84, §602, *as amended*, 26 P.S. § 1-602 (repealed by the Act of May 4, 2006, P.L. 112) (emphasis added). Lang's counsel, also counsel in *Gross*, argues in Lang's brief that *Gross* was wrongly decided because the lower court disregarded the highlighted language. Even if Lang's counsel is correct, the General Assembly's omission of such language in Section 702(a) of the Code compels the conclusion that it did not intend delay damages to be included in just compensation.

> i.e., at the time of the taking, the integrity of the constitutional requirement can be respected only by including in the award for the value of the property taken such damage as there may have been (within legally prescribed limits) due to the delay in payment for the property.

*Id.* at 560 (quoting *Fid.-Phila. Trust Co. v. Commonwealth*, 42 A.2d 585, 586 (Pa. 1945)). The award calculated by DOT and adopted by the trial court conforms to the Code's requirements and "includ[es] in the award for the value of the property taken such damage as there may have been . . . due to the delay in payment for the [P]roperty." *Id*. Accordingly, Lang's argument is without merit.[17]

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[17] In support of his position, Lang also relies on *Woods v. Department of Transportation*, 641 A.2d 633 (Pa. Cmwlth. 1994), for the proposition that "partial payments are always applied first to interest and then to principal." Lang Br. at 18. Notably, *Woods* involved the payment of delay damages in a personal injury action and thus the payments in that case were not governed by the Code. Rather, that payment is controlled by Pennsylvania Rule of Civil Procedure No. 238(a)(1).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andrew A. Lang Jr.,                      :
                    Appellant           :
                                        :
          v.                            :
                                        :
Commonwealth of Pennsylvania,           :    No. 551 C.D. 2014
Department of Transportation            :


O R D E R

AND NOW, this 14th day of March, 2016, the Allegheny County Common Pleas Court's March 24, 2014 order is affirmed.


_____
ANNE E. COVEY, Judge