605 A.2d 1286

In re Condemnation By the Commonwealth of Pennsylvania, Department of Transportation of Right of Way, for Legislative Route 1046, Section 2A R/W, a Limited Access Highway in the Township of Upper Providence.

Appeal of COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant.

Commonwealth Court of Pennsylvania.

Argued March 5, 1991.

Decided March 13, 1992.

Reargument Denied May 14, 1992.

William J. Cressler, Asst. Chief Counsel, for appellant.

A. Richard Gerber, for appellee.

Before CRAIG, President Judge,[*] McGINLEY, J. (P.), and BARRY, Senior Judge.

BARRY, Senior Judge.

The Department of Transportation (DOT) appeals from the final judgment of the Court of Common Pleas of Montgomery County in a condemnation case. The jury awarded condemnees $785,000 as just compensation. The trial judge then awarded delay damages and attorneys' and appraiser's fees totalling an additional $1,825,567.05, for a total judgment of $2,610,567.05.[1]

## I. Procedural History

In 1965, condemnees[2] acquired for development 37 acres (zoned for agricultural use) in Upper Providence Township, Montgomery County. The township's 1971 comprehensive plan set forth the recommended use for the property as high density residential. After enactment of the 1971 plan, the township permitted rezoning of properties in the immediate area of the property because the comprehensive plan recommended the high density residential use.

In August 1973, condemnee Huganir requested rezoning of the property from agricultural to high density resi-

---

[*] This matter was argued before a panel consisting of Judge McGinley, Judge Byer and Senior Judge Barry. Because of the conclusion of Judge Byer's service the case was submitted on briefs to President Judge Craig for his consideration as a member of the panel.

1. This case was reassigned to this author on January 6, 1992.

2. The property was initially held by Upprov Corporation, but in 1975 Upprov was dissolved and title was transferred to condemnees, William Huganir, Mary D. Colen, and Margery Elliot, now deceased, as the former shareholders.

dential. The township supervisors refused because DOT planned to condemn the property for the purpose of constructing the Oaks Interchange of the Pottstown Expressway.[3]

DOT prepared plans laying out the expressway through the property. In December 1974, the governor authorized the condemnation of a right of way across 8.5 acres of the property. DOT filed these plans with the Montgomery County Recorder of Deeds.

As of September 1975, DOT had acquired 189 of the 197 properties along the proposed expressway, including properties both east and west of the property. DOT negotiated for acquisition of the property and made condemnees an offer. DOT advised condemnees that if they did not accept DOT's offer within one week, the property would be taken. Condemnees wrote DOT on September 9, 1975, and again on August 4, 1977, advising DOT to file a formal declaration of taking. DOT did not file a formal declaration of taking until 1982.

Condemnees filed preliminary objections to this 1982 declaration of taking, asserting that a de facto taking had occurred after June 10, 1975, but no later than August 4, 1977.

Condemnees also filed a separate petition for appointment of viewers, to which DOT filed preliminary objections. In this action, the parties executed stipulations which were incorporated into a court order. The parties agreed that the issue of a de facto taking would be determined by the trial court in another proceeding before the hearing by the board of viewers.

Judge Yohn sustained condemnees' preliminary objections to the declaration of taking and held that a de facto taking had occurred on December 13, 1975. Judge Yohn found:

3. Plans for the Pottstown Expressway first came to the attention of the township supervisors and the community in 1967, generating widespread newspaper publicity, as well as public and private meetings between DOT and local residents, including township supervisors.

21. But for the knowledge that the Pottstown Expressway passed directly through the subject property, the subject property was desirable, attractive, marketable and needed for development as high density housing in 1975.

30. The highest and best use of the property during the period from June 10, 1975 through August 4, 1977 was for high density residential development, with sewer, water, and other utilities available on site.

31. The actions of the Commonwealth in preparing and filing plans for the acquisition of the subject property, announcing its intentions over a period of several years, conducting meetings with affected property owners, public officials, and local residents, acquiring property on either side of the condemnees' property, making offers to the condemnees, and physically intruding on the condemnees' property, damaged the condemnees' property and placed a cloud upon it so as to deprive the condemnees of the beneficial use and enjoyment of the property for its highest and best use, which was high density residential development.

Judge Yohn also concluded that:

4. The factors attributed to the Commonwealth's actions which took place prior to and during the period in question, i.e. June 10, 1975 through August 4, 1977, when considered *individually*, do not deprive an owner of the use and enjoyment of his property such as to constitute a de facto taking. *Standard Investment Corporation v. Commonwealth*, 28 [Pa.] D & C 3d 294 (1982), *aff'd* [80 Pa.Commonwealth Ct. 649] 472 A.2d 282 (1984), *aff'd per curiam* [506 Pa. 337] 485 A.2d 392 (1984). However, the totality of the following factors, when considered together, so deprived the property owner of the use and enjoyment of the property or subject it to loss as to constitute a de facto take:

a) Rumors and discussions as to the Expressway project generating media attention;

b) The Township Board of Supervisors refusing to consider a rezoning of the property solely because the Commonwealth had informed it that this property was to be acquired as the site of the Oaks Interchange;

c) A local builder declining to make an offer on the property due solely to the imminence of the road construction project;

d) The planning and recording of the plans designating the subject property as a location for an Interchange and authorizing the Commonwealth to take the same;

e) Notices to and negotiations with property owners concerning the subject property;

f) A threat by the Commonwealth to take the property within one week if their offer of compensation was not accepted;

g) Acquisition of 189 of 197 of the properties needed for the highway, including parcels on either side of the subject property;

h) Public and private meetings with Township officials and property owners;

i) Staking the subject property;

j) Inability of property to generate income sufficient to cover taxes or other expenses without resorting to sources of income outside the property; and

k) The presence of an Information Title Certification which revealed the recorded plans as exceptions to any policy of title insurance issued for the property.

(Findings of Fact and Conclusions of Law of Judge Yohn, 8/19/88.)

Judge Yohn appointed a board of viewers to determine the amount of damages from the de facto taking of the 8.5 acres. DOT appealed that ruling to this Court, but then discontinued its appeal before the filing of briefs.

After DOT discontinued its appeal, the board of viewers held a hearing to determine damages. The board concluded it was bound by Judge Yohn's finding that the highest and best use of the property was high density residential. The

board awarded delay damages, calculated at the interest rate payable for six month certificates of deposit for the applicable year. The board also awarded attorney and appraiser fees.

Both DOT and the condemnees appealed the board's decision to the trial court. DOT requested a preliminary determination of legal issues pursuant to Section 517 of the Eminent Domain Code,[4] 26 P.S. § 1-517. In particular, DOT sought a preliminary determination of whether the board erred in ruling that it was bound by Judge Yohn's finding on the highest and best use of the property. The court heard oral argument on this point.

On June 11, 1990, after the jury was impaneled but before opening statements, the court ruled that Judge Yohn's findings on the highest and best use were binding on the parties and that no evidence to the contrary could be presented. Further, the court held that, by failing to pursue its appeal from Judge Yohn's order, DOT waived its right to challenge the procedure to which the parties previously had stipulated.

During the jury trial, condemnees' appraisal expert Joseph J. Daley, Jr., testified that the highest and best use of the property was high density residential, more specifically apartment development. In an attempt to reach a value, Mr. Daley testified that builders were willing to pay a price for the land depending upon the number of units which could be built on the parcel. Mr. Daley determined that 350 units could be built at a cost of $2,000 per unit, totaling $700,000. After subtracting the condemnation value of $40,000, he estimated condemnees' damages at $660,000. DOT objected to Mr. Daley's method of calculation. However, the jury returned a verdict of $785,000.[5] DOT appealed.

4. Act of June 22, 1964, Special Sess., P.L. 84, *as amended.*

5. The court issued a separate order which established delay damages and attorney and appraiser fees and incorporated the jury verdict.

■ Our scope of review in an eminent domain case is limited to whether the trial court abused its discretion, an error of law was committed, or the findings of fact are supported by substantial evidence. *In re: Condemnation of 30.60 Acres of Land,* 132 Pa.Commonwealth Ct. 158, 572 A.2d 242 (1990).

## II. Preliminary Determination Concerning Highest and Best Use

■ Section 517 of the Eminent Domain Code, 26 P.S. § 1–517, provides:

> All objections, other than to the amount of the award, raised by the appeal shall be determined by the court preliminarily. The court may confirm, modify, change the report or refer it back to the same or other viewers. A decree confirming, modifying or changing the report shall constitute a final order.

DOT contends that "highest and best use" was so basic to the inquiry that the trial court erred in failing to rule before trial on the preclusive effect of Judge Yohn's finding that high density residential development was the highest and best use. However, the court did rule on this issue before any aspect of the trial commenced, other than impaneling of the jury. Thus, DOT had the benefit of this ruling before opening statements or the examination of the first witness. DOT has not demonstrated any manner in which it suffered prejudice because it did not have an earlier decision of this issue.

DOT has no basis to contend that the lack of an earlier ruling by the court prevented it from preparing adequately for trial. DOT certainly knew it was likely that the case would be tried on the basis of Judge Yohn's earlier ruling on the highest and best use. That is the basis upon which the board of viewers had decided the case, and prudence would have dictated that DOT prepare for trial on the basis that the court might rule that no additional evidence would be admissible on highest and best use and that its expert

would not be permitted to testify to an opinion of value based upon a different highest and best use.

Section 517 of the Eminent Domain Code, 26 P.S. § 1–517, does not require that a trial judge decide all legal issues at some point in advance of jury selection. We have interpreted this section of the code as giving the trial judge discretion to determine the proper timing of rulings on legal questions. *See, e.g., PennDOT v. Fackler,* 100 Pa.Commonwealth Ct. 546, 515 A.2d 102 (1986); *Kellman Fund v. Department of Transportation,* 24 Pa.Commonwealth Ct. 102, 354 A.2d 583 (1976).

In *Fackler,* we emphasized that the trial judge's exercise of discretion is to be guided by his or her determination of what steps best will expedite ultimate resolution of the case. In this regard, the trial court pertinently explained:

> In no way would a pretrial decision regarding the binding effects of Judge Yohn's findings have expedited the resolution of the instant case and it is dishonest of the Commonwealth to suggest otherwise. Throughout the fifteen year history of this case the Commonwealth has sought every opportunity for delay. It was therefore a proper exercise of discretion for this Court to deny the Commonwealth's special appeal and proceed with the trial uninterrupted by yet another appeal to the Commonwealth Court. The fact that the Commonwealth was thereby left ill prepared was the result of a tactical gamble it sought to pursue and not the result of bias or prejudice stemming from this Court.

(Trial court opinion, 11/15/90.)

We hold that the trial court acted within his discretion by not making an earlier ruling on this issue.

### III. Issue Preclusion

■ DOT argues that the trial court erred in holding that it was precluded from presenting its expert's testimony on the highest and best use, because highest and best use was only one of the factors which Judge Yohn considered in concluding that a de facto taking had occurred. DOT

asserts that because highest and best use controls the determination of just compensation,[6] which was the major issue before the board or jury at the trial de novo, the court erred by giving preclusive effect to Judge Yohn's prior determination on highest and best use in the context of determining whether a de facto taking occurred. We agree that the court erred in this regard.

Section 1-406 of the Eminent Domain Code, 26 P.S. § 1-406, provides in part as follows:

(a) Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking. The court upon cause shown may extend the time for filing preliminary objections. Preliminary objections *shall be limited to* and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof. (Emphasis added.)

The question of damages simply has no relevance when preliminary objections are filed. The trial court's finding that the highest and best use of the property condemned, during the period from June 10, 1975 through August 4,

---

**6.** Just compensation is defined as the difference between the fair market value of the property before and after condemnation. Section 602(a) of the Eminent Domain Code, 26 P.S. § 1-602(a). DOT contends that highest and best use is the most important factor experts use to determine fair market value.

Section 603 of the Eminent Domain Code, 26 P.S. § 1-603, provides: Fair market value shall be the price which would be agreed to by a willing and informed seller and buyer, taking into consideration, but not limited to, the following factors:

(1) The present use of the property and its value for such use.

(2) The highest and best reasonably available use for the property and its value for such use.

(3) The machinery, equipment and fixtures forming part of the real estate taken.

(4) Other factors as to which evidence may be offered as provided by Article VII.

1977, was for high density residential development was made only in the context of whether the condemnee's property was so affected that the owners were deprived of the beneficial use and enjoyment of the property for its highest and best use. This issue is entirely different from what is the fair market value of the property condemned. To deprive the Commonwealth of the opportunity to show a different highest and best use of the property in connection with its opinion of fair market value was error. The trial court should not have determined that there was preclusion because of its finding of the highest and best use of the property in connection with the hearing on preliminary objections. The order of August 19, 1988, of the trial court states merely as follows:

AND NOW, this 19th day of August, 1988, after hearing before the undersigned and upon consideration of the briefs of counsel, the condemnees' preliminary objections to the formal Declaration of Taking filed by the Commonwealth are SUSTAINED and condemnees are entitled to the appointment of a Board of View to determine the amount of damages to condemnees' property by virtue of the de facto taking of 8.5 acres of the subject property. For the purpose of calculating such damages, the date of the taking is December 13, 1975, one year following the filing of the formal plans authorizing said taking as provided in 26 P.S. § 402(d).

Because the determination concerning the highest and best use of the property made on preliminary objections has no effect on the jury's subsequent determination of damages DOT was not required to take an appeal. Because DOT was precluded from presenting evidence and argument on this question which is crucial to the jury's determination of the damages suffered, a new trial is required.

At this point we could legitimately refuse to consider the remaining allegations of error of DOT. Given the age of this entire matter and in the interest of judicial economy, we believe it best to answer these allegations in an effort to hasten the final resolution of the case.

## IV. Unit Rule

 DOT argues that condemnees' expert improperly valued the property by using the "unit rule." [7] Specifically, DOT contends that Mr. Daley determined valuation on a cost per apartment unit basis rather than on a cost per land area basis, even though the property was vacant land. DOT also contends that Mr. Daley's valuation process violated Section 602(a) of the Eminent Domain Code, 26 P.S. § 1–602(a). [8]

These arguments are contradicted by Mr. Daley's testimony concerning his methodology in appraising the property.

Q. So that we're clear here, Mr. Daley, when you say the price per unit, are you referring to the actual purchase of an apartment or are you referring to the cost of the raw land on which the apartment is done?

A. This refers only to the purchase of the raw land. The subject is a raw land property and the comparables we related to the subject were raw land transactions.

(Transcript of Hearing, 6/12/90.)

We stated in *PennDOT v. Becker*, 118 Pa.Commonwealth Ct. 620, 546 A.2d 1282 (1988), that such an approach does not violate the unit rule. In that case a valuation expert looked to the different uses the land could be utilized for and assigned values pursuant thereto. In finding this procedure acceptable, we stated:

The record shows that [the expert's] testimony did not violate the "unit" rule, because he gave only values for

7. The "unit rule" is a valuation process where the number of units or lots being evaluated are valued individually then simply added together to determine the value of the property as a whole. *See PennDOT v. Becker*, 118 Pa.Commonwealth Ct. 620, 546 A.2d 1282 (1988). We have held this method of valuation to be improper. *Scranton Penn Furniture Co. v. City of Scranton*, 92 Pa.Commonwealth Ct. 45, 498 A.2d 469 (1985).

8. Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code.

the whole property before and after the taking. He testified that the way he arrived at his valuation was to first conclude that the highest and best use of the property was to use the house, outbuildings, and 1.35 acres as a residence and to sell the remaining acreage for commercial development. The combined value equalled $327,000. [The expert] testified under cross-examination, that in determining fair market value, he did not simply add up the separate valuations, but rather made a conscious determination that, in this particular case, the sum of the parts equalled the whole. Cross-examination, as in this case, was available to test the strength of the [expert's] testimony, and for the fact finder to determine the persuasive weight of his testimony.

*Id.*, 118 Pa.Commonwealth Ct. at 624–25, 546 A.2d at 1285.

Our review of the record shows that Mr. Daley did not simply add up the total number of units but examined the potential number of buildable units as part of the valuation process for the property as a whole. Mr. Daley was cross-examined regarding the process he used to evaluate the property. It was up to the jury, as fact finder, to determine his credibility as a witness and the weight to give his testimony.

## V. Delay Damages and Fees

DOT next asserts that the trial court erred in computing delay damages because it used a local commercial loan rate instead of a certificate of deposit investment rate; DOT also alleges error when the court awarded attorney and appraiser fees.[9]

---

9. Condemnees assert that DOT has not preserved these issues for review, because it failed to raise them in its post-trial motion. *See Harborcreek Township v. Ring,* 131 Pa.Commonwealth Ct. 502, 570 A.2d 1367, *appeal denied,* 525 Pa. 629, 578 A.2d 416 (1990); *Bucks County Water and Sewer Authority v. Rawlings,* 129 Pa.Commonwealth Ct. 511, 566 A.2d 357 (1989); *but see Borough of Jefferson v. Bracco,* 113 Pa.Commonwealth Ct. 223, 536 A.2d 868, *appeal denied,* 522 Pa. 597, 562 A.2d 321 (1988). This issue currently is pending decision by the Supreme Court in *Philadelphia Electric Right of Way, appeal granted,* 524 Pa. 635, 574 A.2d 75 (1990). Although *Harborcreek* would direct a holding that DOT waived its right to raise these

## A. *Delay Damages*

■ DOT argues that the trial court is required to make findings and provide "discussion" before it can award delay damages at commercial loan rates.

Section 611 of the Eminent Domain Code, 26 P.S. § 1–611, provides for delay damages. In *Hughes v. Department of Transportation*, 514 Pa. 300, 311–12, 523 A.2d 747, 753 (1987), the Supreme Court held that the six percent rate for delay damages under Section 611 of the Eminent Domain Code was unconstitutional and that condemnees "were entitled to delay compensation at the commercial loan rates prevailing during the detention period in question."

Here, the trial court received condemnees' evidence of the commercial loan rates and DOT's evidence of the six-month certificate of deposit rates. Relying on *Hughes*, the trial court awarded delay compensation at commercial loan rates. However, DOT argues that the trial court should, in each and every case, reconsider whether to award delay damages at rates lower than commercial loan rates. We do not agree.

In *Hughes*, the Supreme Court, in approving commercial loan rates, stated:

In holding the mandatory six percent rate of section 611 unconstitutional, [the trial judge] considered the rate of interest for commercial loans during the period of detention. . . . There was also additional expert testimony on assorted bank and money market investments available during the period in question. The court ultimately determined that the landowners were entitled to delay compensation at the commercial loan rates on interest

issues on appeal by failing to raise them in its post-trial motion, we will discuss the merits because of the possible conflict among our decisions in *Harborcreek, Rawlings,* and *Bracco* and because this question soon will be resolved by the Supreme Court which might require a remand in this case in the event the Supreme Court disagrees with this aspect of *Harborcreek* and we did not reach the merits.

prevailing during the detention period in question. We agree with this decision.

*Id.,* 514 Pa. at 311–12, 523 A.2d at 753.

Because the Supreme Court in *Hughes* approved commercial loan rates without requiring any specific findings, we hold that the trial court here was not required to make specific findings and could properly award delay damages based on commercial loan rates.

## B. *Attorney Fees*

■ DOT argues that the trial court abused its discretion by awarding attorney fees based upon a contingent fee agreement between condemnees and their counsel. Section 609 of the Eminent Domain Code, 26 P.S. § 1–609, entitles de facto condemnees to reasonable attorney fees. These fees are to be determined by the trial court as a portion of the verdict rendered by a jury. *Airportels, Inc. Appeal,* 59 Pa.Commonwealth Ct. 86, 428 A.2d 1026 (1981).

"It is well established that the reasonableness of an attorney fee is a matter for the sound discretion of the trial court and can be disturbed by an appellate court only when there is a clear abuse of discretion." *Condemnation of Lands in Pgh.,* 69 Pa.Commonwealth Ct. 621, 625, 451 A.2d 1071, 1072–73 (1982).

On July 12, 1990, the trial court held a half-day evidentiary hearing. Condemnees presented evidence showing the work performed by their counsel from 1974 to the time of the hearing. Counsel agreed to perform this work on the basis of a signed contingent fee agreement, providing for a fee of one-third of the gross recovery. DOT presented no evidence.

The trial court directed payment of the contingent fee agreement of one-third of the gross recovery, including delay damages, but excluding prepayment on estimated just compensation of $56,600 (41a).

DOT argues, without authority, that the fees are not reasonable because condemnees testified to only a partial documentation of the total number of hours expended by

their counsel over the past seventeen years and therefore, the trial court's reliance on the contingent fee agreement was improper.

We have affirmed payment of counsel fees based on contingent fee agreements in numerous cases without regard to the actual hours spent by counsel. *See Harborcreek; PennDOT v. Schodde*, 99 Pa.Commonwealth Ct. 50, 512 A.2d 101 (1986); *Condemnation of Lands in Pgh.* In *Harborcreek*, we considered "all the circumstances" of the case, including the risk that counsel took in taking the case, and awarded attorney fees based on a forty percent contingent fee agreement, even though there was only a partial documentation of hours.

Because of the circumstances of this case, especially counsels' seventeen year commitment through the various administrative and judicial procedures before attaining a verdict, we hold that the trial court did not abuse its discretion in awarding counsel fees based on the contingent fee agreement.

Vacated and remanded.

### ORDER

NOW, March 13, 1992, the order of the Court of Common Pleas of Montgomery County is vacated and the matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.