In re DE FACTO CONDEMNATION and Taking of Lands of WBF Associates, L.P. by Lehigh–Northampton Airport Authority

**Appeal of Lehigh–Northampton Airport Authority**

In re De Facto Condemnation and Taking of Lands of WBF Associates, L.P. by Lehigh–Northampton Airport Authority

**Appeal of WBF Associates, L.P.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2003.

Decided March 26, 2004.

Michael D. Klein, Allentown, for appellant.

Kevin T. Fogerty, Allentown, for appellee.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

This eminent domain case concerns Lehigh–Northampton Airport Authority's (LNAA) de facto taking of property owned by WBF Associates, L.P. (WBF), which occurred as a result of LNAA's planned expansion of the Lehigh Valley International Airport (Airport). LNAA has appealed the report of the board of viewers, seeking a trial de novo. Currently before this court are the consolidated cross-appeals of LNAA and WBF from a June 27, 2003, order of the Court of Common Pleas of Lehigh County (trial court) disposing of motions for preliminary determinations pursuant to section 517 of the Eminent Domain Code [1] (Code).

On September 27, 1990, WBF purchased an undeveloped 632–acre tract of land (Property) from C. Thomas Fuller (Fuller), who retained a mortgage on the Property (first mortgage).[2] (R.R. at 227a–66a.) On or about August 2, 1994, Fuller executed a $300,000.00 line of credit note and related mortgage to WBF (second mortgage).[3] (R.R. at 182a–226a.) The Property is located just north of the Airport operated by LNAA. WBF planned to develop the Property into a planned residential development (PRD).

However, the PRD project was halted in January of 1994, when LNAA publicly announced that it would be acquiring approximately 1,500 acres of land north of the Airport for Airport expansion. The expansion area included all of WBF's 632 acres. Announcement of the Airport expansion received widespread publicity throughout the Lehigh Valley, including a front page article in The Morning Call, a newspaper of general circulation in Allentown and surrounding counties. Further, LNAA started acquiring properties within the

---

1. Act of June 22, 1964, Special Sess., P.L. 84, 26 P.S. § 1–517. Section 517 of the Code provides, in relevant part, that with respect to appeals from the report of a board of viewers,
 [a]ll objections, other than to the amount of the award, raised by the appeal shall be determined by the court preliminarily. The court may confirm, modify, change the report or refer it back to the same or other viewers. A decree confirming, modifying or changing the report shall constitute a final order.
 26 P.S. § 1–517. The intent of this section of the Code is to permit the court to preliminarily dispose of purely legal issues questioned by the parties that are basic to the inquiry.

2. The purchase price was paid partly in cash, with the balance financed by a $3,075,850.00 purchase money note secured by Fuller's first mortgage on the Property. (R.R. at 227a–66a, 271a.)

3. Fuller actually advanced only $78,578.87 of this amount to WBF.

1,500–acre expansion area, with all acquisition activities widely publicized through The Morning Call newspaper.

As a direct effect of LNAA's actions regarding the proposed Airport expansion, WBF's development partner exercised its right to terminate its participation in the PRD project. Despite diligent efforts, WBF was unable to attract new investment partners because they foresaw LNAA's eventual condemnation of the Property. Consequently, the PRD project was unable to move forward for lack of financing. Although WBF had not experienced any internal financial difficulties prior to the announcement of the proposed Airport expansion, WBF now faced a funding crisis which led it to default on its first and second mortgages. In December of 1995, Fuller, the mortgagee of the Property, instituted a foreclosure action on the second mortgage, which was decided in favor of Fuller in June of 1997.[4] (R.R. at 267a–70a.)

The situation led WBF, on September 30, 1996, to file a petition for appointment of a board of viewers pursuant to section 502(e) of the Code,[5] 26 P.S. § 1–502(e), alleging that a de facto taking of its property occurred because of the financial effects resulting from LNAA's public announcement of its Airport expansion plan, LNAA's acquisition of properties surrounding WBF's Property and the consequential demise of the PRD project. LNAA then filed preliminary objections to WBF's petition for appointment of a board of viewers. (R.R. at 1a.)

In lieu of an evidentiary hearing, the parties agreed to present evidence before the trial court consisting of deposition testimony, pleadings, affidavits, record papers, discovery responses and numerous exhibits. The trial court made findings based upon the extensive record, briefing and oral argument. Particularly relevant here is the trial court's Findings of Fact, No. 16, in which *the trial court found that the highest and best use of the Property is as a PRD*. (R.R. at 21a.) The trial court ultimately determined that WBF successfully established a de facto taking of its Property. Consequently, in an opinion and order dated June 15, 1998, the trial court dismissed LNAA's preliminary objections and granted WBF's petition for appointment of a board of viewers. The trial court fixed the date of taking as September 30, 1996, and appointed a board of viewers to assess the damages pursuant to the Code. (R.R. at 3a; 14a–47a.)

Following LNAA's appeal to this court, we affirmed the trial court's determination of a de facto taking, and our supreme court subsequently denied LNAA's petition for allowance of appeal. *Lehigh–Northampton Airport Authority v. WBF Associates, L.P.*, 728 A.2d 981 (Pa. Cmwlth.), *appeal denied*, 560 Pa. 751, 747 A.2d 372 (1999). On December 2, 1999, Fuller filed a petition to intervene in the proceedings, pursuant to section 506(b) of the Code, 26 P.S. § 1–506(b), in order to protect his interest in the proceedings as mortgagee of the Property. (R.R. at 5a.)

WBF filed a motion to compel payment of estimated just compensation (EJC) on December 20, 1999, (R.R. at 5a), and by letter dated December 22, 1999, LNAA made a written offer to pay the EJC of

---

4. WBF appealed to the superior court, which, in July of 1998, upheld the order granting Fuller the right to foreclose on the second mortgage. In October of 1998, Fuller was granted authority to sell the Property at a judicial sale. (LNAA's brief at 7.)

5. Section 502(e) of the Code provides that where a compensable injury is suffered for which no declaration of taking has been filed, a condemnee may file a petition for the appointment of a board of viewers setting forth such injury. 26 P.S. § 1–502(e).

$3,150,000.00 on January 4, 2000. In the offer, LNAA noted Fuller's petition for intervention and stated that, unless instructed to the contrary, it would pay the EJC to WBF. (R.R. at 97a.)

In May of 2000, anticipating the board of viewers' upcoming scheduled view of the Property, Fuller filed: (1) a motion to stay proceedings before the board of viewers pending the court's determination on Fuller's petition to intervene; and (2) a motion for an order requiring LNAA to pay the EJC to Fuller, as holder of the first mortgage and the second mortgage judgment on the Property. (R.R. at 5a–6a.) At oral argument on Fuller's petition to intervene, held on May 12, 2000, the trial court, in granting intervention, noted the competing claims for the EJC between WBF and Fuller and directed LNAA to file a petition for appointment of a Master to resolve the dispute. The following day, LNAA filed a petition for distribution of damages pursuant to section 521 of the Code,[6] 26 P.S. § 1–521, seeking direction from the court on paying out the EJC.[7] (R.R. at 6a; 91a–94a.)

Prior to board of viewers' hearings, LNAA sent notices to three individuals who had testified on the issue of highest and best use of the Property in the earlier de facto taking proceedings. LNAA sought to re-depose these people regarding the property's highest and best use, this time for the purpose of establishing the value of the Property for the assess-

ment of damages. In response, WBF filed a motion for a protective order, alleging that the findings of fact and conclusions of law made by the trial court in its June 15, 1998, opinion and order on the de facto taking constituted the "law of the case" with respect to the issue of the highest and best use of the Property. (R.R. at 6a; 48a–55a.) Both WBF's motion for a protective order and LNAA's petition for distribution of damages were scheduled for oral argument on November 3, 2000.

Meanwhile, in an effort to settle the dispute with respect to the recipient of the EJC and delay compensation, WBF and Fuller executed a Stipulation detailing the history, terms and money due under each of the two mortgages between those two parties. The terms of the Stipulation included, *inter alia:* WBF's acknowledgment that the first and second mortgages are valid, enforceable liens against the Property; a statement of the principal amounts, along with the accrued and continuing interest, owed under these mortgages; and recognition of Fuller's right to receive all of the EJC, along with the balance of the just compensation and any delay compensation up to the amount of the debt secured by the liens of the first mortgage and the second mortgage judgment, with WBF being entitled to any additional amounts. (R.R. at 106a–11a.) On November 2, 2000, WBF and Fuller presented the Stipulation to the trial court and requested that the trial court adopt

---

**6.** Section 521 of the Code provides, *inter alia,* that when a condemnor is unable to determine the proper distribution of damages, the condemnor may, without payment into the court, petition the court to distribute the damages. 26 P.S. § 1–521.

**7.** LNAA supplied the trial court with a proposed schedule of distribution as required under section 521 of the Code, suggesting that WBF and Fuller each receive fifty percent of the EJC. (R.R. at 98a.) Because WBF and

Fuller both claimed entitlement to the entire EJC, each filed objections to the appointment of a Master. Therefore, on August 9, 2000, LNAA filed an amended petition for distribution of damages pursuant to section 522 of the Code, 26 P.S. § 1–522. Under this Code section, the condemnor may pay the EJC into court in order to stop the accrual of delay damages on the offered amount. (R.R. at 101a–04a.)

the Stipulation and enter it as an order of the court. Before agreeing to do so, however, the trial court required LNAA's involvement and consent.

Subsequently, LNAA's attorney executed and signed an addendum to the Stipulation, which stated, in relevant part:

[LNAA] does not object to the terms of the Stipulation previously executed by counsel for WBF and C. Thomas Fuller, and acknowledges that upon the filing of this Addendum to Stipulation, an Order will be entered by the Court, in the form as that previously submitted by counsel for WBF and counsel for [LNAA], incorporating the terms of that Stipulation into the form of Court Order proposed by counsel for WBF and for C. Thomas Fuller.

(R.R. at 112a.) The order incorporating the Stipulation and addendum thereto was entered on November 2, 2000.[8] (R.R. at 8a; 105a.) On that same date, LNAA gave Fuller a check for the full EJC payment of $3,150,000.00.

On November 3, 2000,[9] following argument, the trial court granted WBF's motion for a protective order, holding that LNAA is barred and precluded by the doctrines of law of the case, res judicata and collateral estoppel, from pursuing discovery and from attempting to offer evidence at trial on issues previously ruled on by the trial court in its June 15, 1998, opinion and order. (R.R. at 8a; 66a–88a.) Thereafter, when the board of viewers conducted its hearings, in August of 2001, LNAA restricted its appraisal testimony in accordance with the trial court's November 3, 2000, order. In supplemental board of viewers' proceedings, WBF sought recovery of mortgage interest and delay damages, pursuant to sections 609 and 611 of the Code, respectively.[10] 26 P.S. §§ 1–609 and 1–611. The viewers agreed with WBF, and, in addition to awarding damages for the value of the Property, the viewers' report included an award of mortgage interest and delay damages running from September 30, 1996, the date of the taking. (R.R. at 117a–20a.)

On October 21, 2002, the board of viewers filed its second amended report awarding damages to WBF for the de facto taking. (R.R. at 10a; 114a–29a.) Thereafter, on November 18, 2002, November 19, 2002, and November 20, 2002, respec-

---

**8.** In that same order, Fuller's pending motion for payment of the EJC and LNAA's pending petition for distribution of damages were dismissed as moot. (R.R. at 8a; 105a.).

**9.** This order was filed on December 13, 2000.

**10.** Section 609 of the Code provides that where a condemnee institutes proceedings under section 502(e) of the Code, an award of compensation shall include reimbursement of reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred. 26 P.S. § 1–609.

Section 611 of the Code provides, in relevant part:

[t]he condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation.... Compensation for delay in payment shall, however, be paid at the rate of six percent per annum from the date of relinquishment of possession of the condemned property by the condemnee, or if the condemnation is such that possession is not required to effectuate it, then delay compensation shall be paid from the date of condemnation: Provided, however, That no compensation for delay shall be payable with respect to funds paid on account, or by deposit in court, after the date of such payment or deposit. Compensation for delay shall not be included by the viewers or the court or jury on appeal as part of the award or verdict, but shall at the time of payment of the award or judgment be calculated as above and added thereto. There shall be no further or additional payment of interest on the award or verdict.

26 P.S. § 1–611.

tively, WBF, LNAA and Fuller each filed an appeal from the report of the board of viewers and demanded a jury trial pursuant to sections 515 and 516(a) of the Code, 26 P.S. §§ 1–515 and 1–516(a). (R.R. at 10a; 130a–39a.)

■ Subsequently, LNAA, WBF and Fuller filed motions for preliminary determinations pursuant to section 517 of the Code, 26 P.S. § 1–517, (R.R. at 11a; 141a–54a; 157a–65a), asking that, prior to the trial de novo, the trial court resolve the following legal issues:

1. Whether the November 3, 2000, protective order precluding LNAA from presenting evidence in conflict with the findings of fact contained in the June 15, 1998, order of court is binding upon the court at the trial de novo;

2. Whether the Stipulation of the parties about mortgages and mortgage interest rates can be modified in the trial de novo;

3. Whether WBF is entitled to recover mortgage interest and delay damages from September 30, 1996, the date of the de facto taking;

4. Whether credit to LNAA for payment of estimated just compensation should commence on November 2, 2000, the date of payment; and

5. Whether WBF is entitled to recover its reasonable attorneys, appraisal and engineering fees, as well as other expenses, under 26 Pa.C.S.A. [sic] § 1–609.

(See LNAA's brief at Exhibit "A," trial court op. at 5–6.) Following oral argument on May 14, 2003, and after consideration of the briefs filed by the parties, the trial court, in an opinion and order dated June 27, 2003, made the following preliminary determinations.

1. That [LNAA] may present evidence at trial regarding the highest and best use of the property as it relates to a determination of fair market value and just compensation;

2. That [LNAA] is precluded from challenging the validity of the WBF/Fuller Mortgages[,] and the Stipulation incorporated as an Order of the Court on November 2, 2000, is admissible as evidence at trial;

3. That WBF is entitled to delay damages pursuant to 26 Pa.C.S.A. [sic] § 1–611 to commence on September 30, 1996, the date of the taking;

4. That WBF is entitled to recover mortgage interest from September 30, 1996, pursuant to 26 Pa.C.S.A. [sic] § 1–609;

5. That [LNAA] will receive credit for payment of Estimated Just Compensation from November 2, 2000, the date of actual payment; and

6. That WBF is entitled to recover reasonable attorney, appraisal and engineering fees pursuant to 26 Pa.C.S.A. [sic] § 1–609.

(LNAA's brief at Exhibit "A," Order.) WBF and LNAA now appeal to this court.[11] WBF challenges the trial court's preliminary determination number 1 and part of preliminary determination number 2. In its cross-appeal, LNAA challenges the trial court's preliminary determinations numbers 2 through 5.

**1. The Order of November 3, 2000**

Judge James Knoll Gardner presided over this case from its inception through November of 2002, when the case was

---

11. Our scope of review in an eminent domain case is limited to whether the trial court abused its discretion or committed an error of law, and whether the findings of fact are supported by substantial evidence. *Appeal of Commonwealth, Department of Transportation,* 146 Pa.Cmwlth. 344, 605 A.2d 1286 (1992).

transferred to Judge Carol K. McGinley. As stated, Judge Gardner, in a decision dated November 3, 2000, granted WBF's motion for a protective order, thereby precluding LNAA from presenting evidence during the damages portion of the case that would conflict with the findings of fact contained in Judge Gardner's June 15, 1998, opinion and order rendered in the de facto taking portion of the case, particularly with respect to the highest and best use of the Property.[12] (R.R. at 66a–67a.) In the preliminary determination phase of the case, Judge McGinley overturned that November 3, 2000, order, ruling that LNAA may present evidence at trial regarding the highest and best use of the property as it relates to a determination of fair market value and just compensation. WBF argues that Judge McGinley erred in doing so.

According to WBF, Judge McGinley could not revisit and reverse Judge Gardner's November 3, 2000, protective order because such action was barred by the coordinate jurisdiction rule. Alternatively, WBF maintains that, because the issue of highest and best use of the Property was a critical component of Judge Gardner's June 15, 1998, holding in the de facto taking proceedings, Judge Gardner correctly determined that LNAA's attempt to re-litigate the highest and best use issue is precluded by the doctrines of law of the case, res judicata and collateral estoppel.

■■■ LNAA counters that Judge McGinley was not bound by Judge Gardner's prior ruling where Judge Gardners' application of the doctrines of law of the case, res judicata and collateral estoppel in his November 3, 2000, order was erroneous.[13] Relying on *Appeal of Commonwealth, Department of Transportation,* 146 Pa.Cmwlth. 344, 605 A.2d 1286 (1992) (hereinafter, *Route 1046*), LNAA maintains that the findings in the June 15, 1998, opinion with respect to the highest and best use were relevant only to determine whether a de facto taking occurred, and, thus, the findings are not binding subsequently on the board of viewers or at a trial de novo with regard to the question of the fair market value of the Property for determining just compensation. We agree with LNAA.

Here, Judge Gardner made his November 3, 2000, evidentiary ruling prior to the board of viewers' hearings. LNAA subsequently appealed from the report of the board of viewers; therefore, the matter before Judge McGinley was LNAA's request for preliminary determinations prior

12. By order dated January 11, 2001, Judge Gardner denied LNAA's motion to reconsider the November 3, 2000, order or certify it as immediately appealable, and this court subsequently denied LNAA's petition for review of the January 11, 2001, order. (R.R. at 9a–10a.)

13. The doctrine of law of the case embodies the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326 (1995); *Riccio v. American Republic Insurance Co.,* 453 Pa.Super. 364, 683 A.2d 1226 (1996), *aff'd,* 550 Pa. 254, 705 A.2d 422 (1997). The coordinate jurisdiction rule falls within the ambit of the law of the case doctrine. Under that rule, judges of coordinate jurisdiction sitting in the same case should not overrule one another's decisions. *Starr; Riccio.* That is, where a matter is transferred between trial judges of coordinate jurisdiction, the transferee trial court judge may not alter the resolution of a legal question previously decided by the transferor judge. *Starr; Riccio.* Departure from this rule is allowed only in exceptional circumstances, such as where there has been an intervening change in the controlling law, a substantial change in the evidence presented, or where the prior holding was clearly erroneous and would create a manifest injustice if followed. *Starr; Riccio.*

to a trial de novo. *See Condemnation By Pennsylvania Turnpike Commission,* 548 Pa. 433, 698 A.2d 39 (1997). Because questions concerning the admission or exclusion of evidence at trial are within the sound discretion of the trial judge, *Valentine v. Acme Markets, Inc.,* 455 Pa.Super. 256, 687 A.2d 1157 (1997), Judge Gardner's earlier evidentiary ruling did not automatically bind Judge McGinley at a trial de novo. Thus, Judge McGinley properly concluded that the coordinate jurisdiction rule did not hinder the trial court from making a preliminary determination that might be inconsistent with Judge Gardner's prior ruling.

Moreover, like the trial court, we agree with LNAA that, under the precedent set forth in *Route 1046,* the finding of highest and best use from the de facto taking portion of the case has no relevance in the damages phase of the proceedings. In *Route 1046,* as here, the trial judge, based on highest and best use, determined that a de facto taking had occurred. A board of viewers appointed to determine damages concluded that it was bound by the trial judge's finding of the highest and best use of the property and awarded damages in line with that finding. The parties appealed and requested a preliminary determination of whether the board of viewers erred

in making that conclusion. The trial court ruled that the trial judge's finding on highest and best use bound the parties and that no contrary evidence could be presented. On appeal, this court determined that the court erred in this regard. After noting the limited scope of preliminary objections filed under section 406 of the Code,[14] this court stated:

> [t]he question of damages simply has no relevance when preliminary objections are filed. The trial court's finding that the highest and best use of the property condemned [by a de facto taking] ... was for high density residential development was made only in the context of whether the condemnee's property was so affected that the owners were deprived of the beneficial use and enjoyment of the property for its highest and best use. This issue is entirely different from what is the fair market value of the property condemned. To deprive [DOT] of the opportunity to show a different highest and best use of the property in connection with its opinion of fair market value [for purposes of determining just compensation] was error.

*Route 1046,* 605 A.2d at 1291. Like Judge McGinley, we conclude that *Route 1046* is on all fours with the present case,[15] and we

14. Section 406(a) of the Code provides that preliminary objections shall be limited to and shall be the exclusive means of challenging (1) the power or right of the condemnor to appropriate the condemned property; (2) the sufficiency of the security; (3) the procedures followed by the condemnor; or (4) the declaration of taking. 26 P.S. § 1–406(a).

15. In his November 3, 2000, opinion, Judge Gardner attempts to distinguish *Route 1046* on grounds that the condemnation in *Route 1046* began with DOT's formal declaration of taking, to which the condemnees filed preliminary objections pursuant to, *and limited by,* section 406 of the Code. Judge Gardner writes that, in such a case, "the court is limited in what it can consider ... [a]nd the highest and

best use of the property ... are not enumerated in the limited authority that the Court has in preliminary objections under such a procedural posture." (Trial ct. op. of November 3, 2002, at 13, R.R. at 80a.) Judge Gardner contrasts this situation to the present case, where WBF began by seeking a declaration of a de facto taking and appointment of a board of viewers under section 502(e) of the Code. According to Judge Gardner, LNAA's preliminary objections to WBF's action were filed, not under section 406 of the Code but, rather, pursuant to section 504 of the Code, 26 P.S. § 1–504, which contains *no limitations.* Judge Gardner states that, in such cases, the "court is not limited and not only can, but ... indeed, must determine the highest and best

agree that depriving LNAA of the opportunity to show a different highest and best use of the property in connection with its opinion of fair market value would be error.[16] Accordingly, the trial court did not err in reversing Judge Gardner's November 3, 2000, order and allowing LNAA to present evidence of highest and best use of the Property at the trial de novo.

## 2. The Stipulation and the WBF/Fuller Mortgages

### A. LNAA's Waiver

Next, LNAA argues that the trial court erred or abused its discretion in determining that the Stipulation between WBF and Fuller, which was entered as an order of court on November 2, 2000, is binding on LNAA and precludes LNAA at trial from challenging the existence, validity or terms of the two WBF/Fuller mortgages, and the resulting recoverability of mortgage-related interest. LNAA contends that, while the Stipulation resolves the competing claims of WBF and Fuller to the EJC, LNAA was not a party to the Stipulation, and, therefore, the Stipulation did not bind LNAA. LNAA acknowledges that it signed

an addendum stating that it "does not object to the terms of the Stipulation"; however, LNAA asserts that this statement meant only that LNAA did not object to the way WBF and Fuller had agreed to divide payments on the mortgages, so that LNAA could make payment of the EJC. "Simply put, LNAA, by executing the Addendum, agreed not to object to how the 'pie' would be divided between WBF and Fuller. However, LNAA did not agree to the size of the 'pie.'" (LNAA's brief at 14.)

On the other hand, the trial court agreed with WBF that, under the doctrine of waiver, LNAA is precluded from challenging the validity and enforceability of the mortgages and the amounts due thereunder.[17] Waiver is a voluntary and intentional abandonment or relinquishment of a known right and may be established by a party's express declaration or by undisputed acts or language so inconsistent with a purpose as to leave no opportunity for a reasonable inference to the contrary. *Samuel J. Marranca General Contracting Co., Inc. v. Amerimar Cherry Hill Associ-*

use in order to dispose of the preliminary objections on the de facto taking." (Trial ct. op. of November 3, 2002, at 14, R.R. at 81a.)

In addressing Judge Gardner's opinion, Judge McGinley stated that this was a distinction without a difference. We agree, and we reject Judge Gardner's position. In fact, this court has held that preliminary objections are the appropriate procedure to test the legal sufficiency of a petition for the appointment of viewers alleging a de facto taking, and such preliminary objections should be of the same scope and serve the same purpose as that assigned to preliminary objections to a formal declaration of taking. *Nether Providence Township v. Jacobs,* 6 Pa.Cmwlth. 594, 297 A.2d 550 (1972). Indeed, we note that in *Route 1046,* as in the present case, the finding of highest and best use was made in connection with a determination that there had been a de facto taking of the condemnees' property

by DOT prior to DOT's formal declaration of taking.

16. For the same reason, we reject WBF's argument with respect to the application of the doctrines of res judicata and collateral estoppel. Because the amount of damages awarded in a de facto taking case is unrelated to the question of whether a de facto taking occurred, these doctrines clearly do not apply to preclude the introduction of evidence of highest and best use to determine the fair market value of the property. *Route 1046.*

17. The trial court also considered WBF's contention that LNAA is prohibited from challenging the mortgages under the doctrines of equitable estoppel and judicial estoppel, rejecting the former contention and accepting the latter. Because we resolve this issue on the basis of waiver, we need not consider these alternative doctrines.

*ates Limited Partnership*, 416 Pa.Super. 45, 610 A.2d 499 (1992). We agree that both LNAA's express declaration and its actions amount to waiver.

Here, Judge Gardner specifically asked LNAA to take a position with respect to the Stipulation. In response, LNAA did not object to any of the Stipulation's provisions; to the contrary, LNAA signed an addendum expressly stating that LNAA did not object to the terms of the Stipulation executed by WBF and Fuller, the provisions of which confirmed the existence and validity of the WBF/Fuller mortgages and the amounts due under each mortgage. (R.R. at 106a–11a.) Moreover, LNAA acknowledged that, upon its filing of the addendum to the Stipulation, the court would enter an order "incorporating the terms of that Stipulation into the form of a Court Order proposed by counsel for WBF and for C. Thomas Fuller." (R.R. at 112a.) Finally, after consenting to entry of the November 2, 2000, formal order of court establishing the existence and validity of the WBF/Fuller mortgages, LNAA paid the EJC to Fuller pursuant to that order. With these actions, LNAA assumed a position accepting all the terms in the Stipulation and gave up its right to object to those terms.

LNAA argues that it was not a party to the Stipulation and, thus, cannot be bound by it. However, we remind LNAA that, as a party to this case, it was afforded an opportunity to oppose the Stipulation proposed by WBF and Fuller, and it chose not to do so. The Stipulation now is in the form of an order of court in this eminent domain proceeding, and, again as a party

in this case, LNAA is bound by the order entered. Accordingly, we conclude that the trial court did not err in determining that LNAA voluntarily waived its right to challenge the terms of the Stipulation at trial.

**B. Calculation of Damages under the Stipulation**

■ Following its discussion of the binding effect of the Stipulation on LNAA, the trial court stated:

> To the extent that this is a trial de novo, on the issue of damages, the question of the amounts due is one to be determined by the jury as the finder of fact. To that end, the Stipulation as incorporated into the Order of November 2, 2000, may be admitted as evidence for consideration by the jury in determining the amount of damages due pursuant to said mortgages.

(Trial ct. op. of June 27, 2003, at 15.) Both LNAA and WBF contend that we should reverse the trial court order to the extent that it implies that the issue of mortgage interest due under section 609 of the Code should be submitted to, and decided by, the jury. We agree.

Section 609 of the Code provides that condemnees awarded compensation for a de facto taking of property also are entitled to reimbursement of reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred.[18] 26 P.S. § 1–609. In *Gross v. City of Pittsburgh*, 741 A.2d 234 (Pa. Cmwlth.1999), *appeal denied*, 563 Pa. 632, 758 A.2d 664 (2000), we held that mortgage interest paid during section 502(e) condemnation proceedings is an ownership

---

18. With regard to recovery of reasonable appraisal, attorney and engineering fees under section 609, the trial court here recognized that the court would determine the matter following trial. (Trial ct. op. of June 27, 2003, at 19.) Moreover, the trial court acknowledges that the issue of delay damages under section 611 of the Code must be addressed only after the jury has determined an award. (Trial ct. op. of June 27, 2003, at 17.)

expense reimbursable under section 609 of the Code. Moreover, this court has held that the determination and award of fees and costs under section 609 of the Code should be made *by the court* after the jury has rendered its verdict on just compensation damages. *Airportels, Inc. Appeal,* 59 Pa.Cmwlth. 86, 428 A.2d 1026 (1981). Accordingly, we reverse the trial court's order to the extent that it directs the Stipulation to be presented to the jury for consideration of amounts due to WBF for mortgage interest under section 609 of the Code.

### 3. Delay Damages

 Next, LNAA argues that the trial court erred or abused its discretion in determining that WBF is entitled to delay damages from September 30, 1996, as opposed to some later time. We perceive no error in the trial court's ruling.

Section 611 of the Code, 26 P.S. § 1–611, provides that the "condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation...." LNAA contends that, because WBF did not relinquish physical possession of the Property until approximately April 1, 2000, delay damages should commence on that date rather than September 30, 1996, the date of the de facto taking. We disagree.

Our supreme court has held that
where a declaration of taking deprives a landowner of the full and normal use of his property, *as established by the use to which his property was devoted prior to the declaration,* then that landowner shall no longer be considered "in possession" within the meaning of section 611, and the condemnee may claim delay damages from the date of the declaration of taking.

*Hughes v. Department of Transportation,* 514 Pa. 300, 309, 523 A.2d 747, 752 (1987) (emphasis in original). In *McGaffic v. Redevelopment Authority,* 732 A.2d 663 (Pa. Cmwlth.), *appeals denied,* 560 Pa. 733, 745 A.2d 1226, and 561 Pa. 663, 747 A.2d 903 (1999), this court applied the rationale in *Hughes* and its underlying equitable considerations to de facto takings. We reasoned that the whole basis for the finding of a de facto taking is that the property owner has been substantially deprived of the full and normal use of his or her property; therefore, we held that, under *Hughes,* "the operative date for the calculation of delay compensation would be ... the date of the *de facto* taking, not the date of relinquishment."[19] *McGaffic,* 732 A.2d at 671.

---

**19.** In *McGaffic,* the condemnees were owners of a commercial building that, in 1968, was slated for acquisition and demolition by the Redevelopment Authority of the City of New Castle (Redevelopment Authority) as part of the Redevelopment Authority's urban renewal plan. By 1973, ninety-six percent of all properties in the project area had been taken and destroyed. However, the condemnees' property was not among them, and, in 1978, the Redevelopment Authority announced that it no longer intended to acquire the condemnees' property. The condemnees filed a petition alleging that the Redevelopment Authority's conduct constituted a de facto taking of the property, and, following a hearing, the court of common pleas found that a de facto taking of the property had occurred on April 12, 1973. Possession of the property was not relinquished to the Redevelopment Authority until December 5, 1994. Subsequently, the board of viewers awarded general damages for the fair market value of the property as of April 12, 1973. Relying on *Hughes,* the board of viewers also directed that delay damages under section 611 of the Code be paid from April 12, 1973, the date of the de facto taking, rather than the date of relinquishment. The court of common pleas agreed, and, on appeal by the Redevelopment Authority, we upheld that determination. We reasoned that the court of common pleas already had found that the condemnees were substantially deprived of the full and normal use of their

LNAA argues that the question of what constitutes the "full and normal" use of the Property is a fact question to be determined by the court following a jury verdict. Once again relying on *Route 1046*, LNAA maintains that the trial court's ruling improperly gives preclusive effect to Judge Gardner's determination in the de facto taking phase of this case, i.e., that WBF was deprived of the use of its property for its highest and best use as of September 30, 1996, and applies it in the context of delay damages, which is a completely different phase of the case. Earlier in this opinion, we recognized the controlling precedent in *Route 1046*, based on which we rejected the idea that a finding of highest and best use in the de facto taking portion of an eminent domain case would bind a jury charged with determining a property's fair market value in the damages portion of that case. However, we now face a different issue, that of *when* WBF was deprived of the full and normal use of its property. This issue is governed by the precedent set forth in *McGaffic*. Accordingly, because it has been held conclusively that WBF was deprived of the full and normal use of its Property on September 30, 1996, the trial court did not err in determining that WBF was entitled to delay compensation to commence accruing as of that date.

### 4. Mortgage Interest

■ LNAA also argues that the trial court erred in determining that, pursuant to section 609 of the Code, WBF is entitled to recover mortgage-related interest from September 30, 1996, the date of the taking, and continuing throughout the course of the condemnation proceedings. Again, we disagree.

■ Section 609 of the Code is applicable only in cases where a condemnor is found by the court to have taken property without filing a declaration of taking. By virtue of this section, a property owner who is forced to institute his own legal action to establish that a taking has occurred because the condemning authority refuses to acknowledge that its actions constituted a taking, is entitled to a full reimbursement of all costs and expenses actually incurred during the condemnation proceedings. 26 P.S. § 1–609. As we have stated, "[w]here the condemnee has ownership expenses that it would not have paid absent the condemnor's refusal to acknowledge a taking, the condemnee is entitled to recover those expenses." *Gross*, 741 A.2d at 242. In *Gross*, we held that a condemnee was entitled under section 609 to recover mortgage interest and property insurance premiums paid subsequent to the de facto condemnation of its property, reasoning

> For the same reason, Panther Hollow is entitled to reimbursement for mortgage interest paid during the condemnation proceedings. As with the property insurance premiums, mortgage interest was an ownership expense in this case. There would have been no need for Panther Hollow to pay the mortgage interest if the City had acknowledged a taking of Panther Hollow's property when the City placed barriers around the property in 1989. Because the City failed to do so, Panther Hollow had to initiate proceedings under section 502(e) of the Eminent Domain Code, and, thus, Panther Hollow's payment of mortgage interest is reimbursable as a direct result of the condemnation proceedings.

*Id.* Here too, WBF would not have needed to pay mortgage interest after September

property so as to constitute a de facto taking on April 12, 1973; therefore, under *Hughes*,

the condemnees were entitled to delay compensation from that date.

30, 1996, if LNAA had acknowledged a taking of WBF's Property on that date. Therefore, the trial court correctly ruled that WBF is entitled to recover mortgage interest from September 30, 1996.

LNAA also argues that any mortgage interest payable should cease as of late 1998 [20] or, alternatively, at least as of November 2, 2000, when LNAA paid the EJC. We agree with LNAA's alternative argument. Section 407(a) of the Code provides, in pertinent part, that "[t]he condemnor ... shall be entitled to possession or right of entry upon payment of ... the amount of just compensation as estimated by the condemnor." 26 P.S. § 1–407(a). Thus, LNAA's November 2, 2000, payment of the EJC entitled LNAA to possession of the Property and relieved WBF of the mortgage interest ownership expense on that date. Therefore, we reverse the trial court order insofar as it would extend reimbursement for mortgage interest payments beyond November 2, 2000.

### 5. Credit to LNAA for Payment of the EJC

Finally, LNAA argues that the trial court erred or abused its discretion in determining that LNAA should receive credit for payment of the EJC from November 2, 2000, the date of the *actual payment*, as opposed to December 22, 1999, the date of LNAA's *offer to pay* the EJC. Although LNAA still retained the full use and benefit of the EJC, LNAA maintains that it should receive credit as of the earlier date because the only reason it did not pay the EJC on that date was due to the ongoing disagreement between WBF and Fuller regarding distribution of the EJC. LNAA contends that it should not be penalized where the delay in payment was caused solely by WBF and Fuller. LNAA analogizes its situation to that in *Hagan v. East Pennsboro Township*, 713 A.2d 1187 (Pa.Cmwlth.1998), in which this court upheld a trial court's tolling of delay damages for that portion of delay attributable to the condemnees. We cannot accept LNAA's argument.

LNAA claims that it was willing, but unable, to pay the EJC prior to November 2, 2000. However, section 522 of the Code provides, in relevant part, that

> Upon refusal to accept payment of the damages, or of the estimated just compensation under section 407, or if the party entitled thereto cannot be found, or *if for any other reason the same cannot be paid to the party entitled thereto,* the court upon petition of the *condemnor ... may direct payment thereof ... into court ... in full satisfaction thereof.*

26 P.S. § 1–522 (footnote omitted) (emphasis added). Thus, LNAA could have obtained credit for payment of the EJC prior to November 2, 2000, notwithstanding the

---

**20.** With respect to this argument, LNAA points out that Fuller successfully litigated a foreclosure action on the second mortgage, and he was in a position to execute on that judgment in October of 1998. According to LNAA, had Fuller pursued the remedy available to him and proceeded to a judicial sale on the foreclosed second mortgage, the mortgage would have been extinguished and interest would have ceased to accrue on that mortgage. Moreover, because the first mortgage was in default at that time, a purchaser on the foreclosed second mortgage would have been required to pay off the first mortgage after the sale, thereby stopping interest from accruing on the first mortgage as well. However, under section 609, WBF is entitled to recover mortgage interest payments actually incurred. Whether, Fuller could have done something to end those payments at an earlier date is of no moment with respect to what WBF actually paid. WBF should not be penalized because Fuller was in a position to execute on his second mortgage judgment when, in fact, Fuller did not do so.

dispute between WBF and Fuller regarding entitlement to that payment. As the trial court points out, there was nothing to suggest that LNAA could not have paid the EJC to one of the parties or, alternatively, paid the EJC into court, thereby availing itself of the protection offered by section 522 of the Code.

Moreover, LNAA's reliance on *Hagan* is misplaced. In *Hagan,* a township filed a declaration of taking and after a first hearing before a board of viewers, the condemnees requested, and were granted, a continuance so that they could secure the services of a new expert witness. The next board of viewers' hearing did not take place until a year later. Ultimately, a jury awarded a verdict in favor of the condemnees. The trial court then awarded delay damages but tolled the damages for the twelve-month delay caused by the condemnees' continuance. We concluded that the trial court's action was proper, specifically basing that determination on the board of viewers' report which established that the continuance issued by the board of viewers was conditioned upon the condemnees' waiver of delay damages during the period of the continuance. Because there is no such waiver here, *Hagan* is inapplicable.

Accordingly, we affirm the trial court's preliminary determination that grants LNAA credit for payment of the EJC as of November 2, 2000, when LNAA actually made the payment.

In sum, we reverse the trial court's order with respect to the preliminary determinations that: (a) the Stipulation incorporated as an Order of the Court on November 2, 2000, is admissible as evidence at trial; (b) the Stipulation is to be presented to the jury for consideration of amounts due to WBF for mortgage inter-est under section 609 of the Code; and (c) WBF is entitled to recover mortgage interest beyond November 2, 2000. We affirm the trial court's preliminary determinations in all other respects.

### ORDER

AND NOW, this 26th day of March, 2004, the order of the Court of Common Pleas of Lehigh County, dated June 27, 2003, is hereby affirmed in part and reversed in part in accordance with the foregoing opinion.

CONCURRING OPINION BY Judge SIMPSON.

I concur in the thoughtful majority opinion. I write separately for two reasons. First, I write to commend the trial judges, especially the most recent judge, the Honorable Carol K. McGinley, on the professional manner in which issues in this unnecessarily complicated case were addressed.

Second, I write to circumscribe preliminary determinations in condemnation cases. Section 517 of the Eminent Domain Code [1] directs in pertinent part that on appeal from the board of viewers, "[a]ll objections, other than to the amount of the award, raised by the appeal shall be determined by the court preliminarily."

The purpose of this statutory provision "is to enable a trial court to dispose of legal issues questioned by the parties to the litigation in the hope that those parties, otherwise satisfied with the amount of the award, would then be satisfied with the board's report and not demand trial de novo." *Kellman Trust Fund v.Commonwealth, Dep't of Transp.,* 24 Pa.Cmwlth. 102, 354 A.2d 583, 591, n. 8 (1976). The provision does *not* require all questions of law be settled before trial, only that the

---

1. Act of June 22, 1964, Special Sess., P.L. 84, 26 P.S. § 1–517.

board of viewers' report be settled before trial. *Id.* at 594–95. Admissibility of evidence or legal issues may be considered during the course of a trial or before a trial commences. *Id.* at 595.

In this case, the parties show an affinity for litigation. No party is satisfied with the board of viewers' report, and all parties demand trial de novo. It is unlikely that any preliminary determination will move the case closer to the amicable settlement which was the goal of the drafters.

Under these circumstances there is no reason to expand the function of preliminary determinations. In particular, I would not burden the trial court with preliminary determination of evidence, such as the issues relating to the effect of the protective order on proof of market value and admissibility of the Stipulation. This is especially true here, where trial is further delayed by this appeal. I concur in the decision because neither the parties nor the trial judge raise this issue.